# EXHIBIT A



Search for Cases by: [Select Search Method... ▾]

ase.net

Judicial Links   |   eFiling   |   Help   |   Contact Us   |   Print          GrantedPublicAccess **Logoff KATEGASPER**

**2116-CV18224 - DRE HEALTH CORPORATION V BRM TRADES, LLC ET AL (E-CASE)**

FV   FileHeader

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending ○ Ascending          Display Options: [All Entries ▾]

---

**09/21/2021**  ☐ <u>Notice of Service</u>
  Affidavit of Service of First Amended Verified Petition; Exhibit 1; Electronic Filing Certificate of Service.
  **Filed By:** G EDGAR JAMES
  **On Behalf Of:** DRE HEALTH CORPORATION

**09/13/2021**  ☐ <u>Summons Issued- 1st Class Mail</u>
  Document ID: 21-SFCM-83, for OBERLANDER, CHAIM BENJAMIN.

**09/03/2021**  ☐ <u>Correspondence Filed</u>
  Correspondence to Clerk; Electronic Filing Certificate of Service.
  **Filed By:** G EDGAR JAMES
  **On Behalf Of:** DRE HEALTH CORPORATION

  ☐ <u>Amended Motion/Petition Filed</u>
  First Amended Verified Petition for Damages; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E; Correspondence to Clerk; Electronic Filing Certificate of Service.
  **Filed By:** G EDGAR JAMES
  **On Behalf Of:** DRE HEALTH CORPORATION

**08/25/2021**  ☐ <u>Summons Issued- 1st Class Mail</u>
  Document ID: 21-SFCM-75, for BRM TRADES, LLC.

  ☐ <u>Case Mgmt Conf Scheduled</u>
  **Scheduled For:** 12/15/2021;  9:00 AM ;  JOHN M. TORRENCE;  Jackson - Kansas City

  ☐ **Judge Assigned**

**08/20/2021**  ☐ <u>Request Filed</u>

  ☐ **Filing Info Sheet eFiling**
  **Filed By:** G EDGAR JAMES

  ☐ **Note to Clerk eFiling**
  **Filed By:** G EDGAR JAMES

  ☐ <u>Pet Filed in Circuit Ct</u>
  Petition for Damages; Exhibit A; Exhibit B; Exhibit C; Letter to Clerk.
  **Filed By:** G EDGAR JAMES
  **On Behalf Of:** DRE HEALTH CORPORATION

---

Case.net Version 5.14.24                    <u>Return to Top of Page</u>                    Released 09/07/2021

Privacy · Terms

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

| | | |
|---|---|---|
| **DRE HEALTH CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: _____** |
| | ) | |
| **BRM TRADES, LLC,** | ) | |
| **Serve Registered Agent:** | ) | |
| **VCORP Agent Services, Inc.** | ) | |
| **25 Robert Pitt Drive, Suite 204** | ) | |
| **Monsey, NY 10952** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## PETITION FOR DAMAGES

DRE Health Corporation, by and through its undersigned counsel, and for its causes of action against Defendant BRM Trades, LLC (hereinafter "BRM"), states as follows:

1. Plaintiff DRE Health Corporation (hereinafter "DRE") is a Missouri Corporation authorized to conduct business in the state of Missouri.

2. Defendant BRM is a New York corporation with its main business address of 25 Robert Pitt Drive, Monsey, New York, 10952, and service may be accomplished on is Registered Agent VCORP Agent Services, Inc., 25 Robert Pitt Drive, Suite 204, Monsey, New York 10952.

### Jurisdiction & Venue

3. BRM entered into a business transaction with DRE which was finalized in Missouri.

4. Venue is proper in this court and this court has personal jurisdiction over BRM pursuant to BRM's specific agreement and consent to the exclusive venue and jurisdiction for the resolution of any dispute or suit arising between DRE and BRM to be within the State of Missouri

as set forth in the New Customer Application dated March 8, 2021. A true and accurate copy of the New Customer Application (the "Initial Agreement") executed by Defendant is attached hereto and incorporated herein as Exhibit A.

5.     The Initial Agreement states, in pertinent part, as follows:

> "The applicant warrants the information supplied above to be true, and agrees that information set forth on this form may be shared with affiliates of DRE Health Corporation ("DRE"), including other members of the DRE Corporation family of companies. The Applicant authorizes DRE Health Corporation, to investigate the references herein, statements or other data obtained from Applicant or from any other person pertaining to the Applicant's credit and financial responsibility. The Applicant agrees to abide by the Standard Terms of Sale published regularly by DRE, as shown on DRE's invoices, or by any other terms of sale upon which DRE and the Applicant should agree in writing. The Applicant agrees to pay interest on past due accounts at the highest rate permitted by law, together with attorneys' fees and all other costs and expenses incurred by DRE in collecting such accounts. The Applicant agrees that all payments to which DRE is entitled shall be paid to DRE at its offices in Kansas City, Missouri. The Applicant agrees that the laws of Missouri shall govern all transactions between DRE and the Applicant, that exclusive venue and jurisdiction of any dispute or suit arising between DRE and the Applicant shall lie within the courts of the State of Missouri, and the Applicant hereby consents to the jurisdiction of the Missouri courts in any such dispute or suit. NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this credit is the Federal Trade Commission, Division of Credit Practices, 6th and Pennsylvania Avenue, NW, Washington, D.C. 20580."

## <u>ALLEGATIONS COMMON TO ALL COUNTS</u>

6.      DRE is a medical supply business which, among other things, manufactures and/or provides Personal Protective Equipment (PPE) to various medical entities and other medical suppliers.

7.      BRM executed Exhibit A, referenced above, on or about March 8, 2021.

8.      BRM also entered into the Purchase Order with DRE dated July 30, 2021 (Purchase Order Number 2107291) for the purchase and delivery of approximately 241,900 cases of medical exam gloves (nitrile; vinyl & synthetic) totaling over 240 million medical exam gloves.

9.      Pursuant to the Initial Agreement, BRM agreed to abide by the Standard Terms of Sale published regularly by DRE on its website.

10.      The Purchase Order with DRE is governed by the "General Terms and Conditions of Sale, Delivery and Payment of DRE Health Corporation established in Missouri/Kansas and of its associated companies" (hereinafter referred to as "Terms and Conditions") found on DRE's website at the following link: www.drehealth.com/terms-conditions-of-sale.    A true and accurate copy of the Terms and Conditions are attached as Exhibit B and incorporated herein by reference.

11.      Article 1 of the Terms and Conditions states:

> "These General Terms and Conditions shall apply to and be incorporated into all offers by and agreements relating to the delivery of goods by or between DRE Health or any of its legal successors or companies affiliated with or owned by DRE Health or with said successors (hereinafter: the Company), and the customer or client (hereinafter: the Customer) with whom the Company contracts through any offer, purchase order or agreement."

12.       Section 20.1 of "Article 20 – disputes and applicable law" of the Terms and Conditions states:

> "20.1  With regard to any and all disputes in connection with the agreement, or with regard to further agreements arising or resulting

> from or in connection with said agreement, the state or federal courts of Jackson county, state of Missouri, shall have exclusive jurisdiction in the first instance, unless the Company explicitly opts in writing for the competence of the court of the domicile or in the place of business of the Customer."

13.     Section 20.2 of "Article 20 – disputes and applicable law" of the Terms and Conditions state:

> "20.2   The agreement, as well as any and all further agreements arising or resulting from or in connection with said agreement, shall be governed by and construed in accordance with the laws of the State of Missouri, with the exception of the stipulations of the Vienna Sales Convention or any other future international regulation on the purchase of movable goods of which the applicability may be excluded by the parties."

14.     The terms contained within the Initial Agreement also provide that BRM agreed to pay interest on past due accounts at the highest rate permitted by law, together with attorneys' fees and all other costs and expenses incurred by DRE in collecting such account.

15.     A true and accurate copy of the purchase order agreement (the "Purchase Order") between DRE and BRM dated July 30, 2021 (Purchase Order Number 2107291) is attached hereto as Exhibit C.

## COUNT I – BREACH OF CONTRACT

16.     DRE incorporates the averments made and contained in paragraphs 1 through 15 above as if the same were fully stated herein.

17.     BRM entered into a contract(the "Purchase Order"), attached as Exhibit C and dated July 30, 2021, with DRE whereby DRE agreed to ship large quantities (over $3 million dollars' worth) of PPE equipment, specifically nitrile gloves, vinyl gloves and synthetic gloves, to BRM in exchange for BRM's promise to pay for the same.

18.     The terms of the Purchase Order state, in all capital letters, as follows:  "100% PAYMENT DUE IMMEDIATELY."

4

19.     DRE was ready to fully perform its responsibilities and provide the PPE product, but BRM breached the terms of the Purchase Order by failing to provide the funds required for such PPE equipment by the required date of July 30, 2021.

20.     BRM breached the contract by failing to pay the amount due immediately as required.  BRM made a partial payment on August 5, 2021, and did not pay the balance until August 7, 2021, more than a week overdue.

21.     BRM's breach of the agreement arising from  BRM's failure to timely pay caused a domino effect which damaged DRE.

22.     Due to the failure of BRM to make timely and complete payment on July 30, 2021, as required, during the subsequent week DRE's freight forwarder, unbeknownst to DRE, sold the product on its own, to a different buyer, causing the product to no longer be available for supply to Defendant.

23.     BRM materially breached its contract with DRE by failing to timely pay the required amounts pursuant to the parties' written agreement and by failing to fulfill BRM's obligations pursuant to the parties' agreement.

24.     Due to BRM's breach of the agreement, DRE has sustained and continues to sustain substantial damages.

WHEREFORE, based on the above and foregoing, DRE prays the Court grant judgment against BRM for an amount in excess of $25,000, for DRE's costs and reasonable attorney's fees, and for any and all relief the Court deems just and equitable.

## COUNT II – SPECIFIC PERFORMANCE FOR DISSOLUTION OR RESCISSION OF AGREEMENT

In the alternative to Count I, Plaintiff moves for specific performance of the Contract which requires its dissolution and rescission.

27.     DRE incorporates the averments made and contained in paragraphs 1 through 15 above as if the same were fully stated herein.

28.     The Terms and Conditions attached as Exhibit C state in relevant part:

"10.4 The Company shall be entitled to repossess any goods delivered under retention of title that are still present at the Customer's forthwith and without prior notice of default, in the event that the Customer fails in the performance of his obligations. The Customer irrevocably authorizes the Company to exercise this right to repossess insofar as is necessary."

29.     The Terms and Conditions attached as Exhibit C also state in relevant part:

"10.5 In the event that and insofar as the Company has exercised its right to repossess as referred in the preceding para graph, the agreement shall be dissolved wholly or for a proportionate part without any judicial intervention, without prejudice to the right of the Company to compensation of damage and costs. The Customer shall then be credited with the market value (which on no account can be higher than the original purchase price), reduced by the damage suffered and costs incurred by the Company."

30.     BRM failed in the performance of its obligations as it did not make timely payment immediately as required by the Purchase Order.

31.     Plaintiff is entitled to return the money received from Defendant and deduct from the reimbursed sums the damage suffered and costs incurred by the Plaintiff arising from its failure to timely make payment and its resulting breach of the written contract.

32.     Plaintiff has offered to Defendant to perform as required by the Contract and Defendant has failed to respond as of the date of this Petition and has, instead, threatened to seize certain goods belonging to DRE.

WHEREFORE, Plaintiff prays for Judgment from the Court enforcing the terms of the Contract and for such other and further relief as the Court deems fair and just.

Dated August 20, 2021

Respectfully submitted,

**JAMES SOBBA, LLC**

*/s/     G. Edgar James*
G. EDGAR JAMES          MO# 49585
LAWRENCE E. NORDLING  MO# 62319
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone:  (816) 623-0043
ejames@jamessobba.com
lnordling@jamessobba.com
 **ATTORNEYS FOR PLAINTIFF**
**DRE HEALTH CORPORATION**

Pro Hac Vice Motion to seek pro hac admission of
the additional following counsel for Plaintiff in this
case will be filed after assignment of case number:

JONES DAY
Adam W. Wiers, Esq.
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 269-4078
Facsimile: (312) 782-8585
Email: awwiers@jonesday.com

7



# New Customer Application

## ▶ Section A – Company Information

Date: 03/08/2021

**Account Number:** _____

*Complete Business Name and Address (Shipping Information)*

Name BRM Trades LLC

Address 25 Robert Pitt Drive

City Monsey

State NY     Zip 10952

Telephone # 8456375944

Fax # _____

Email: abe@brmtrades.com

*Business Legal Name and Address (Billing Information)*

Name_____

Address_____

City_____

State_____ Zip _____

Telephone #_____

Fax #_____

Email:_____

**Type of Business:** ❏ Corporation ❏ Partnership ❏ Sole Proprietor* (Social Security # is required)      ❏ Other

Principal Owner(s) Yochonon Markovits

Nature of Business _____

Name of Contact Person: _____

DEA# _____

*Social Security Number(s)_____

Years in Business_____

Contact Phone #_____

_____

## ▶ Attach copy of DEA license, Tax Exemption Certificate, and/or a copy of a W-9 or Business License.

Tax Exempt: Yes___  No____  **If you are exempt from paying sales tax in your State, please supply a copy of your State sales tax exemption certificate with your completed application. Manufacturers need to incorporate the items they purchase from DRE Health into the product they produce in order to be considered exempt for those items.

The Applicant warrants the information supplied above to be true, and agrees that information set forth on this form may be shared with affiliates of DRE Health Corporation. ("DRE"), including other members of the DRE Corporation family of companies. The Applicant authorizes DRE Health Corporation, to investigate the references herein, statements or other data obtained from Applicant or from any other person pertaining to the Applicant's credit and financial responsibility. The Applicant agrees to abide by the Standard Terms of Sale published regularly by DRE, as shown on DRE's invoices, or by any other terms of sale upon which DRE and the Applicant should agree in writing. The Applicant agrees to pay interest on past due accounts at the highest rate permitted by law, together with attorneys' fees and all other costs and expenses incurred by DRE in collecting such accounts. The Applicant agrees that all payments to which DRE is entitled shall be paid to DRE at its offices in Kansas City, Missouri. The Applicant agrees that the laws of Missouri shall govern all transactions between DRE and the Applicant, that exclusive venue and jurisdiction of any dispute or suit arising between DRE and the Applicant shall lie within the courts of the State of Missouri, and the Applicant hereby consents to the jurisdiction of the Missouri courts in any such dispute or suit. NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this credit is the Federal Trade Commission, Division of Credit Practices, 6th and Pennsylvania Avenue, NW, Washington, D.C. 20580.

*You must sign this form below.*

Each of the undersigned individuals authorizes DRE Health Corporation to make inquiries with any credit reporting agency, bank or trade reference in connection with the extension or credit contemplated hereby.

Principal, Owner, or Authorized Agent     Title     Date

Signature: *Yochonon Markovits*     CEO     03/08/2021

Signature: _____

## ▶ Complete this form and email to: info@drehealth.com

**General Terms and Conditions of Sale, Delivery and Payment of DRE Health Corporation established in Missouri/Kansas and of its associated companies.**

Article 1 - definitions

1.1 These General Terms and Conditions shall apply to and be incorporated into all offers by and agreements relating to the delivery of goods by or between DRE Health or any of its legal successors or companies affiliated with or owned by DRE Health or with said successors (hereinafter: the Company), and the customer or client (hereinafter: the Customer) with whom the Company contracts through any offer, purchase order or agreement.

1.2 The applicability of the Customer's general terms and conditions is hereby explicitly rejected.

1.3 Any stipulations deviating from these General Terms and Conditions shall only apply in the event that and insofar as they have been accepted by the Company in writing.

Article 2 - offer

Any offer made by the Company shall be without prejudice to the Company or a waiver if its rights under applicable law and subject to contract; this shall also apply in the event that said offer includes a period for acceptance, unless explicitly provided for to the contrary in writing.

Article 3 - agreement

3.1 An agreement, in this article also including any changes and/or additions thereto, shall not be binding until agreed upon in writing, except in the event that the Company has started the execution of the contract beforehand.

3.2 An agreement is concluded in writing at the moment when the contract is signed by the Chief Executive Officer of the Company or the board of management of the Company and by the Customer, or on the date of dispatch (by post and/or by telefax) by the Company of the written order confirmation signed by its board of management, or of the Company's invoice. Promises made by and arrangements with subordinates or agents of the Company shall not bind the Company unless these have been confirmed by the Chief Executive Officer or board of management of the Company in writing.

EXHIBIT B

3.3 The contract represents the contents of the agreement completely and correctly. The order confirmation by the Company or the Company's invoice shall be considered to represent the contents of the agreement correctly unless the Customer protests against its contents forthwith in writing.

3.4 Slight deviations with customary tolerances shall be permitted at the execution of the agreement.

3.5 Unilateral cancellation from the side of the Customer shall be null and void, unless the Company agrees to such cancellation in writing.

Article 4 - notices, information and statements

Notices, information, statements and samples made or supplied by the Company, in whatever form or nature, shall only be indicative and shall never bind the Company, unless the agreement explicitly provides for the contrary.

Article 5 - confidentiality

The Customer shall observe confidentiality towards any third party in the broadest sense of the word regarding any and all business information relating to the Company, which has been brought or come to his knowledge by the Company and/or within the framework of the offer or the agreement.

Article 6 - prices

6.1 The prices stated and/or agreed upon by the Company shall be exclusive of taxes - including Value Added Tax ("B.T.W.") - and levies, and shall be based on the Terms and Conditions (of delivery) as mentioned in the following articles.

6.2 In the event no Value Added Tax ("B.T.W.") or other taxes or levies are due because the goods are destined for delivery within the North American market, those taxes shall nevertheless be charged, but shall be credited if the Customer proves that a delivery as referred to in this paragraph has indeed taken place.

6.3 Insofar as the stated and/or agreed prices are based on the weight of the goods, this weight shall be determined by the weighing carried out by the Company before the delivery, using calibrated weighing apparatus. The Customer shall have the right to be present at said weighing, provided the delivery shall not be delayed because of this. The Customer shall take the initiative thereto himself in good time.

EXHIBIT B

6.4 The Company shall have the right to increase the stated and/or agreed prices in the event of an increase in prices of goods, raw materials or parts to be obtained from third parties, wages, national insurance contributions, freight, insurance premiums or other cost price factors (including changes in foreign exchange) and charges (including import and transit duties).

In the event that a price increase takes place within three months after the conclusion of the agreement, the Customer who is also a consumer shall be entitled to dissolve the agreement.

6.5 In the event that the state d and/or agreed prices are (also) based on restitutions of levies and/or on subsidies, whereas these are not obtained for whatever reason, the Company is entitled to adjust the prices accordingly.

Article 7 - delivery – delivery period – delivery time

7 .1 Unless explicitly agreed upon otherwise, the delivery shall be made "Ex Works" (EXW) from the premises of the Company. The interpretation of the terms and conditions of deli very shall be determined by the most recent edition at the time of conclusion of the agreement of the Incoterms, as issued by the International Chamber of Commerce.

7.2 The delivery period shall commence at the latest on:

- the date of conclusion of the agreement;

- the date at which the Company has at its disposal all the documents, information, permits, exemptions, approvals, allocations, etc., needed for the delivery of the goods;

- the date of receipt of a prepayment by the Company and/or the date of provision of a security the Company is entitled to in accordance with the agreement.

7.3 The delivery period shall be based on the circumstances applicable at the time of conclusion of the agreement and on the timely delivery of the materials and goods ordered by the Company for the execution of the agreement. In the event that any delay arises as a result of changes in these circumstances or because the materials and/or goods timely ordered for the execution of the agreement have not been delivered in time, the delivery period shall be extended to such a degree as is reasonable , taking all circumstances into consideration.

EXHIBIT B

7.4 The delivery date of the goods shall be the moment in time when the goods, with the exception of unimportant parts, are ready for shipment, and the Company has informed the Customer thereof, or the time when the goods have left the premises of the Company to be forwarded to the Customer.

7.5 The Company shall be entitled at all times to make partial deliveries, unless explicitly agreed upon otherwise.

7.6 The delivery date shall not be considered to be a firm date, unless explicitly agreed upon otherwise. In the event of attributable exceeding of the delivery date, a notice of default shall always be required. The Customer cannot derive any rights from attributable exceeding of the delivery date insofar as a term of three (3) months is not exceeded. Customer recognizes that revisions in the schedule are inherent in the nature of the supply of Company's goods which may result in revisions in the schedule or delivery of goods. Customer agrees that Company cannot guarantee any delivery date for goods and Company shall bear no financial responsibility for delays that arise through circumstances beyond its sole control, including but not limited to delays due to abnormal weather conditions, material shortage, labor disruption, shipping disruptions, pandemic, war or other reasons beyond the Company's sole control.

7.7 In the event that the Company is in default with regard to the schedule of deliveries or the delivery date, the Customer's sole remedy shall be to dissolve the agreement and pay Company for its costs incurred or good supplied. In that case, any remaining prepaid amounts shall be refunded, without any compensation for interest, however.

Article 8 - transportation

8.1 In all cases and irrespective of the agreed terms and conditions of delivery, the Company shall be entitled to have the goods transported, unloading inclusive, at the expense and risk of the Customer, in a manner to be determined by the Company and using means of transportation at the Company's option.

8.2 The Company shall not be responsible for (the use by the Customer of) any documents (provided by the Company) for the transportation of the goods to the place of destination.

8.3 At the first request of the Company, the Customer shall provide all necessary securities for the documents needed to transport the goods to the place of destination.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

8.4 In the event that circumstances beyond the control of the Company prevent the goods from being transported to or onto respectively delivered at the agreed place, or in the event that the Customer fails to take delivery of the goods, the Company shall have the right - at its option - either to take the products back or to store the goods (or have them stored) at the expense and risk of the Customer. Any costs of return shipment and storage shall be payable by the Customer, while the Customer shall furthermore be obliged to fulfil his obligations to the Company as if delivery had taken place. The costs referred to here shall be determined in advance by the Company and the Customer jointly at 15 per cent at least of the agreed price, without prejudice to the right of the Company to compensation of the actual costs should these be higher.

Article 9 - packaging

9.1 Packaging for single use shall not be taken back by the Company.

The Company shall have the right - at its option - to take back or not take back packaging for repeated use.

9.2 The Company shall have the right to charge the Customer for packaging for repeated use as a separate item on the invoice, together with the delivered goods.

9.3 In cases referred to under paragraph 2 of this article, the Company shall send a credit invoice crediting the invoiced amount to the Customer for pack aging returned to the Company at the Customer's expense upon receiving said packaging, unless the returned packaging is in a condition inferior to the one at the time of acceptance by the Customer, in which case the amount credited shall be reduced accordingly.

9.4 Only upon receipt of the credit invoice shall the Customer be entitled to deduct the value of the returned packaging, to the amount credited to him, from the amount he owes the Company .

9.5 Damage to goods caused by destruction/damage of the pack aging shall at all times be at the Customer's risk.

Article 10 - risk and transfer of property

10.1 The Customer shall bear the risk of any and all direct and indirect damage that may be caused to the goods, immediately after the goods are considered as delivered.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

10.2 The Company shall retain ownership of all delivered goods until any debts payable by the Customer with regard to goods delivered or to be delivered by the Company to the Customer under any agreement, as well as with regard to any failure in the performance of such agreements by the Customer, shall be fully satisfied.

10.3 The Customer is obliged to store the goods delivered under retention of title with the necessary care, and to store them as identifiable property of the Company. The Customer shall furthermore be obliged to insure the goods against damage or loss, by whatever reason, during the period of retention of title. Said insurance shall designate the Company as (co - )insured with an independent right of claim towards insurer(s), and the Customer shall make the policies of these insurances available for inspection to the Company upon request. Upon request of the Company, all claims of the Customer on the insurers pursuant to the insurances referred to above shall be assigned to the Company, or a right of pledge shall be granted to the Company.

10.4 The Company shall be entitled to repossess any goods delivered under retention of title that are still present a t the Customer's forthwith and without prior notice of default, in the event that the Customer fails in the performance of his obligations. The Customer irrevocably authorizes the Company to exercise this right to repossess insofar as is necessary.

10. 5 In the event that and insofar as the Company has exercised its right to repossess as referred in the preceding para graph, the agreement shall be dissolved wholly or for a proportionate part without any judicial intervention, without prejudice to the right of the Company to compensation of damage and costs. The Customer shall then be credited with the market value (which on no account can be higher than the original purchase price), reduced by the damage suffered and costs incurred by the Company.

10.6 The Customer, exercising his profession or business, shall be entitled, within the framework of his business operations, to sell and deliver the goods delivered to him under retention of title to third parties. In the event of such sales, the debt payable by the Customer to the Company regarding the goods resold by the Customer shall become forth with and fully due and payable, insofar as said claim was not already due and payable.

10.7 The Customer shall always be obliged to inform third parties of the Company's retention of title. Furthermore, the Customer shall be obliged to inform the Company of the whereabouts of the goods and of the person or company said goods have possibly been sold to, if so required by the Company.

## Article 11 - payment

11.1 Unless explicitly agreed upon otherwise in writing, payment of the agreed price shall be made at the time of formation of the agreement.

11.2 Any and all payments shall be made without deduction or settlement, effectively in the currency as stated on the invoice.

In the event that the Customer alleges to have a claim on the Company with regard to the performance of the agreement, he will not be discharged from his obligation to pay in the manner agreed.

11.3 In the event that the Company has a well - founded fear that the Customer will not fulfil his obligations, the Company shall at its discretion be entitled to require sufficient security from the Customer with regard to the fulfilment of the obligations to pay, before performing or continuing to do so.

The Company shall be entitled to suspend the fulfilment of its obligations until the Customer has given said security.

11.4 In the event that the Customer has not paid at the time or within the period of time referred to in paragraph 1 of this article , he shall be in default by operation of law and without any prior notice of default being required, and he shall owe the statutory interest on the amount due and payable from the date at which the payment should ultimately have been made, without prejudice to any other rights of the Company (explicitly including the right to compensation of loss on exchange).

11.5 Any costs, both in and out of court, made by the Company with regard to non - fulfilment, overdue or non - sufficient fulfilment of his obligations by the Customer, including extrajudicial collection costs and costs of legal assistance, shall be compensated by the Customer to the Company. The Company and the Customer jointly shall deter mine the extrajudicial collection costs in advance at 15 percent of the principal sum due, without prejudice to the right of the Company to compensation of the actual costs should these be higher.

## Article 12 - return shipments

It shall not be permitted to return any goods delivered by the Company without the Company's prior written con sent. Should any return shipments take place, then this shall at all times be done at the expense and risk of the sender.

## Article 13 - samples

The Customer shall be entitled to ask the Company to put (a) sample(s) of the goods at his disposal before delivery. If the Customer refrains from doing so, he shall be considered to agree to the quality and condition of the goods beforehand.

## Article 14 - complaints and guarantees

14.1 Complaints can only refer to quantity, weight or specification, as well as to non - conformity of the delivered goods with the sample(s) made available by the Company.

14.2 The Customer shall check forthwith the goods ultimately on arrival.

14.3 Any complaints with regard to relevant defects observable at inspection of the goods, as well as complaints in connection with quantity, weight or specification shall be made in writing within 24 hours after the delivery, and include a complete description of the alleged defects, on default of which any claim in this respect shall become void.

14.4 Any complaints with regard to other relevant defects shall be made in writing within 24 hours after their disclosure, and include a complete description of the alleged defects, however ultimately within three ( 3) months after the delivery, on default of which any claim in this respect shall become void.

14.5 Any claim of the Customer with regard to delivered goods shall also become void in the event that:

a. the agreement refers to the delivery of used or damage d goods;

b. the goods have been processed or the goods are otherwise not (or no longer) identifiable as originating from the Company;

c. the defects are (also) caused by normal wear and tear, inexpert and/or incorrect

treatment, use and/or storage or maintenance of the goods;

d. the Customer has not forthwith given the Company the opportunity to investigate the complaints and to fulfil its obligations;

e. the Customer has not, not in time or not sufficiently, fulfilled any obligation resting with him.

EXHIBIT B

14.6 In connection with any parts and/or goods obtained from third parties which have not been treated by the Company, the Customer can only assert his claims against the Company insofar as the Company, in its turn, can assert any claims against its supplier. Should this be the case, the Company shall at any rate be discharged with respect to the Customer by transferring its rights with respect to its supplier to the Customer.

14.7 The Customer is not entitled to assert any rights against the Company in the event that he can also directly assert the rights with regard to the defects concerned against the manufacturer.

14.8 Without prejudice to the provisions in the previous paragraphs of this article, in the event of timely and justifiable com plaints, the Company shall only be obliged - at its option - to either repair the goods, proceed to redelivery or to credit the Customer for the defective goods. These General Terms and Conditions shall apply unimpaired to redelivery.

Article 15 - liability

15.1 The Company's liability under the agreement shall be limited to fulfilment of the obligations described in the agreement, in particular the obligations described in the previous article.

15.2 The Company's liability shall never cover business damage or any other indirect damage.

15.3 With the exception of gross negligence or intent, the Company shall never be liable for direct or indirect damage, including business damage, resulting from the infringement of any intellectual or industrial property rights, licenses or any other rights of third parties.

15.4 Should the Company be held liable by any third party/parties for any damage for which the Company is not liable pursuant to these General Terms and Conditions or otherwise, then the Customer shall be obliged to hold harmless and indemnify the Company against such damage and liability and to compensate it for any possibly ensuing costs, damage and interest.

15.4.1 Customer agrees to indemnify and hold Company harmless for, of and from, any loss or liability that Company may sustain by reason of Customer's breach of any purchase order or agreement or any breach of these terms or conditions or Customer's failure to comply with applicable laws, rules and regulations in connection any contract or purchase order with Company.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

15.5 In no event shall the Company or its officers or employees be liable for any incidental, special, punitive or consequential damages of any kind, including without limitation loss of use, productivity, reputation, financing, business opportunities or profits. Moreover, to the fullest extent permitted by law, regardless of the theory of liability (including, without limitation breach of contract or warranty, negligence, errors or omissions, or strict liability), in no event will the Company's total aggregate liability related to any agreement or purchase order or its goods supplied or produced exceed the amount of compensation paid by Customer to the Company under any agreement or purchase order.

15.6 The limitations and exclusions of liability, as well as indemnity stipulated for the Company itself in the above paragraphs are also stipulated for and on behalf of its employees, any other person employed by it within the framework of the agreement, as well as for the persons from whom the Company obtains delivered goods and/or parts.

Article 16 - force majeure

16.1 The term force majeure in these terms and conditions shall mean any circumstance beyond the Company's control, whether or not foreseeable at the time of conclusion of the agreement, which permanently or temporarily pre vents fulfilment of the contract, and, insofar as these are not yet included, war, danger of war, civil war, revolt, strike, employees' lock - out, freight problems, fire, weather conditions preventing work and other interruptions of the Company's operations or of the operations of the Company's suppliers, as well as default of the Company's suppliers.

16.2 In the event of impediment to the performance of the agreement as a result of force majeure, the Company shall have the right without any judicial intervention, either to suspend the execution of the agreement for a maximum of four (4) months or to wholly or partially dissolve the performance or execution of the agreement, without the Company being obliged to pay any compensation.

EXHIBIT B

Article 17 - (threatening) failure

In the cases provided for by the Law, as well as in the event that the Customer does not, not in time or not sufficiently, fulfil one or more obligations arising for him from the agreement, including the provisions in these General Terms and Conditions, or in the event that there is serious doubt as to the Customer being able to fulfil his contractual obligations towards the Company, as well as in the event of bankruptcy, suspension of payments, complete or partial stoppage of work, liquidation, transfer or encumbrance of the Customer's business, including the transfer or pledging of an important part of his accounts receivable and furthermore in the event that any goods of the Customer are attached before judgement or in execution, the Company shall have the right, without notice of default or judicial intervention, either to suspend the performance or execution of the agreement for a maximum of three (3) months, or to partially or wholly dissolve the agreement, such without being liable to any compensation or guarantee, and without prejudice to any of its other rights.

Article 18 - suspension + dissolution - consequences

18.1 In the event of the Company's suspension of its obligations, it shall be authorized - and obliged at the end of the suspension period - to opt for execution or complete or partial dissolution of the agreement.

18.2 In the event of suspension or partial dissolution by virtue of the provision of the previous article, the agreed price shall be forthwith due and payable, after deduction of any costs not incurred by the Company as a result of the suspension or the partial dissolution.

In the event of partial dissolution the Customer shall furthermore be obliged, after the payment of the amount due pursuant to the previous sentence, to take possession of the goods covered by that payment, failing which the Company shall have the right to have these goods stored at the risk and expense of the Customer, or to have them sold at his expense.

18.3 In the event that the Customer returns the goods received by him from the Company after dissolution of the agreement, said returning of the goods shall at all times be at the risk and expense of the Customer, until said goods have been taken possession of by the Company.

Article 19 - general

19.1 In the event that one or more stipulations of the agreement, including stipulations of these General Terms and Conditions, are null and void or become legally invalid, the remaining provisions of the agreement shall remain in force. Parties shall consult on the stipulations which are null and void or have become legally invalid, in order to make an alternative arrangement.

19.2 Should one or more stipulations of the agreement, including the stipulations of these General Terms and Conditions, be in conflict with mandatory provisions, stipulated by or to be stipulated by a there to competent authority, these latter provisions shall be considered to have replaced the relevant stipulations of the agreement.

Article 20 - disputes and applicable law

20.1 With regard to any and all disputes in connection with the agreement, or with regard to further agreements arising or resulting from or in connection with said agreement, the state or federal courts of Jackson county, state of Missouri, shall have exclusive jurisdiction in the first instance, unless the Company explicitly opts in writing for the competence of the court of the domicile or in the place of business of the Customer.

20.2 The agreement, as well as any and all further agreements arising or resulting from or in connection with said agreement, shall be governed by and construed in accordance with the laws of the State of Missouri , with the exception of the stipulations of the Vienna Sales Convention or any other future international regulation on the purchase of movable goods of which the applicability may be excluded by parties.

-.-.-.-.-.-.-

EXHIBIT B

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM



# INVOICE
# 279672

**+1(833)DRE-HEAL**
**+1(833)373-4325**
**Ext.700**
INFO@DREHEALTH.COM

WWW.DREHEALTH.COM

Attention:
ABE MARKOVITZ
BRM TRADES
INVOICE DATE: 07/30/21

P.O. Number: 2107291
Invoice (QUOTE) Number: 279672
Terms: 100% PAYMENT DUE IMMEDIATELY. FOB RIALTO, CA (DRE will offer free trucking from its self-owned and operated fleet to any destination in the continental US per availability. If unavailable, DRE will cover 25% of freight costs and customer will be responsible for remaining freight charges.). All sales final. Additional terms as outlined in sales terms & conditions available at www.drehealth.com. All prices are according to INCOTERMS FOB. If you choose to purchase delivery from us, INCOTERMS are DDU, SHIPPING WILL BE BILLED SEPARATELY. Buyer is responsible for all customs duties, taxes, and additional fees (no additional fees apply for this transaction). Products are not intended for invasive procedures or surgical use. Title will be transferred to BRM immediately upon receipt of payment. Storage fees at ALL-WAYS will be $400/container per month for the first 6 weeks (prorated per pickup), and $800/month after 6 weeks.

| Description | Qty | UOM | Unit Price | Total Price ($USD) |
|---|---|---|---|---|
| DRE Health Nitrile Gloves, PF, 100/BX, 10BX/CS (BLUE PACK) | 9,900 | CS | $ 40.00 | $ 396,000.00 |
| DRE Health TotalDefense X100 Vinyl Gloves PF. M=4.5g. 100/BX, 10BX/CS | 162,000 | CS | $ 11.25 | $1,822,500.00 |
| DRE HEALTH SYNTHETIC GLOVES PF M=5.0g. 100/BX, 10BX/CS | 70,000 | CS | $ 11.25 | $ 787,500.00 |
| **SIZE RATIO SHALL BE 10/40/40/10 UNLESS OTHERWISE AGREED TO IN WRITING BY BOTH PARTIES** | 68 | CTR | | |
| INSPECTION INCLUDED | | | Total Price | $3,006,000.00 |
| **TOTAL DUE IMMEDIATELY** | | | | **$3,006,000.00** |

1

Thank you for *choosing DRE*.

Sincerely yours,

A.   **Isaac Bawany,** Chief Executive Officer, DRE Health

EXHIBIT C

BANK ACCOUNT FOR WIRE PAYMENT:


**PAYABLE TO (ELECTRONIC PAYMENTS):**

**DRE Health Corporation**

**CHECKS DELIVER TO:**

**DRE Health Corporation**

**C/O ACCOUNTS RECEIVABLE**

**5700 W 112TH ST, STE 300,**

**LEAWOOD, KS 66211 USA**


*JPMorgan Chase Bank, N.A.*

*Account Number:* ███3919

*Domestic: Wire Routing Transit Number (RTN/ABA): 103000648*

*International: SWIFT/BIC code: CHASUS33 ($USD)*

*Bank Address: 270 PARK AVENUE, NEW YORK, NY 10017 UNITED STATES OF AMERICA*



 

3

EXHIBIT C

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

**DRE HEALTH CORPORATION,**

|                          |                                |
|--------------------------|--------------------------------|
| **PLAINTIFF(S),**        | **CASE NO.** 2116-CV18224      |
| **VS.**                  | **DIVISION 14**                |

**BRM TRADES, LLC,**

**DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

_____

     NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JOHN M. TORRENCE** on **15-DEC-2021** in **DIVISION 14** at **09:00 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

     A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

     At the Case Management Conference, counsel should be prepared to address at least the following:

    a.     A trial setting;

    b.     Expert Witness Disclosure Cutoff Date;

    c.     A schedule for the orderly preparation of the case for trial;

    d.     Any issues which require input or action by the Court;

    e.     The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ JOHN M. TORRENCE
JOHN M. TORRENCE**, Circuit Judge**

### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
LAWRENCE EDWARD NORDLING, 1100 MAIN, SUITE 1930, KANSAS CITY, MO 64105

G EDGAR JAMES, JAMES SOBBA, LLC, 4435 MAIN STREET, SUITE 910, KANSAS CITY, MO 64111

Defendant(s):
BRM TRADES, LLC

Dated: 25-AUG-2021

MARY A. MARQUEZ
Court Administrator

Electronically Filed - Jackson - Kansas City - August 20, 2021 - 09:01 AM



**JAMES | SOBBA**
LLC
— ATTORNEYS AT LAW —

August 20, 2021

G. Edgar James
(816) 623-0544 Direct
(816) 853-0403 Mobile
ejames@jamessobba.com

Clerk
Circuit Court of Jackson County
412 East 12th Street
Kansas City, MO 64106

      **Re:**      ***DRE Health Corporation v. BRM Trades, LLC***

Dear Clerk:

      Pursuant to Missouri Supreme Court Rule 54.16, please issue Summons to Defendant BRM Trades, LLC via service by mail and returned to me for service on its registered agent:

BRM TRADES, LLC
Serve Registered Agent:
VCORP Agent Services, Inc.
25 Robert Pitt Drive, Suite 204
Monsey, NY 10952

Thank you.

            Sincerely,

            G. Edgar "Eddie" James

EJ:cs

ONE MAIN PLAZA · 4435 MAIN STREET, SUITE 910 · KANSAS CITY, MO 64111 · 816.623.0544 · JAMESSOBBA.COM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN M. TORRENCE | Case Number: 2116-CV18224 |
| Plaintiff/Petitioner:<br><br>DRE HEALTH CORPORATION<br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>G EDGAR JAMES<br>JAMES SOBBA, LLC<br>4435 MAIN STREET, SUITE 910<br>KANSAS CITY, MO 64111 |
| Defendant/Respondent:<br><br>BRM TRADES, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Service by First Class Mail

**The State of Missouri to:  BRM TRADES, LLC**
                    **Alias:**

SRV RA: VCORP AGENT SVC INC
25 ROBERT PITT DRIVE STE 204
MONSEY, NY 10952



**COURT SEAL OF**

**JACKSON COUNTY**

    You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's/Petitioner's attorney at the above address.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

    25-AUG-2021                    _____
    Date Issued                                              Clerk

    Further Information:

### Directions to Clerk

    The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail.  Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

| | | |
|---|---|---|
| **DRE HEALTH CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2116-CV18224** |
| | ) | |
| **BRM TRADES, LLC,** | ) | **Division:  14** |
| **Serve Registered Agent:** | ) | |
| **VCORP Agent Services, Inc.** | ) | |
| **25 Robert Pitt Drive, Suite 204** | ) | |
| **Monsey, NY 10952** | ) | |
| | ) | |
| **CHAIM BENJAMIN OBERLANDER** | ) | |
| **7091 San Sebastian Circle** | ) | |
| **Boca Raton, FL 33433-1014** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **7050 W. Palmetto Park Road, Suite 15365** | ) | |
| **Boca Raton, FL 33433** | ) | |
| | ) | |
| **Defendants.** | ) | |
|  | ) | |

## FIRST AMENDED VERIFIED PETITION FOR DAMAGES

DRE Health Corporation, by and through its undersigned counsel, and for its causes of action against Defendants BRM Trades, LLC (hereinafter "BRM") and Chaim Benjamin Oberlander ("Oberlander"), state as follows:

1.     Plaintiff DRE Health Corporation (hereinafter "DRE") is a Missouri Corporation authorized to conduct business in the state of Missouri.

2.     Defendant BRM is a New York corporation with its main business address of 25 Robert Pitt Drive, Monsey, New York, 10952, and service may be accomplished on is Registered Agent VCORP Agent Services, Inc., 25 Robert Pitt Drive, Suite 204, Monsey, New York 10952.

3.      Defendant Oberlander is an individual residing in Boca Raton, Florida and can be served at his business 7050 W. Palmetto Park Road, Suite 15365, Boca Raton, Florida 33433 or his residence of 7091 San Sebastian Circle, Boca Raton, Florida 33433.  He committed tortious acts in furtherance of a civil conspiracy tied to a contacts governed by Missouri law and with damages to DRE in Missouri.

## JURISDICTION & VENUE

4.      BRM entered into a business transaction with DRE which was finalized in Missouri.

5.      Venue is proper in this court and this court has personal jurisdiction over BRM pursuant to BRM's specific agreement and consent to the exclusive venue and jurisdiction for the resolution of any dispute or suit arising between DRE and BRM to be within the State of Missouri as set forth in the New Customer Application dated March 8, 2021.  A true and accurate copy of the New Customer Application (the "Initial Agreement") executed by Defendant is attached hereto and incorporated herein as Exhibit A.

6.      The Initial Agreement states, in pertinent part, as follows:

> "The applicant warrants the information supplied above to be true, and agrees that information set forth on this form may be shared with affiliates of DRE Health Corporation ("DRE"), including other members of the DRE Corporation family of companies.  The Applicant authorizes DRE Health Corporation, to investigate the references herein, statements or other data obtained from Applicant or from any other person pertaining to the Applicant's credit and financial responsibility.  The Applicant agrees to abide by the Standard Terms of Sale published regularly by DRE, as shown on DRE's invoices, or by any other terms of sale upon which DRE and the Applicant should agree in writing.  The Applicant agrees to pay interest on past due accounts at the highest rate permitted by law, together with attorneys' fees and all other costs and expenses incurred by DRE in collecting such accounts. The Applicant agrees that all payments to which DRE is entitled shall be paid to DRE at its offices in Kansas City, Missouri.  The Applicant agrees that the

2

laws of Missouri shall govern all transactions between DRE and the Applicant, that exclusive venue and jurisdiction of any dispute or suit arising between DRE and the Applicant shall lie within the courts of the State of Missouri, and the Applicant hereby consents to the jurisdiction of the Missouri courts in any such dispute or suit. NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this credit is the Federal Trade Commission, Division of Credit Practices, 6th and Pennsylvania Avenue, NW, Washington, D.C. 20580."

7.      This Court has jurisdiction over Oberlander pursuant to RSMo § 506.500.1 (1-3) in that, upon information and belief, Oberlander as an agent of BRM, who contracted for business in the state of Missouri, committed tortious acts tortious act with damages sustained in this State as set forth herein.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      DRE is a medical supply business which, among other things, manufactures and/or provides Personal Protective Equipment (PPE) to various medical entities and other medical suppliers.

9.      BRM executed Exhibit A, referenced above, on or about March 8, 2021.

10.     BRM also entered into a Purchase Order 2107291with DRE dated July 30, 2021 ("the Purchase Order") for the purchase and delivery of approximately 241,900 cases of medical exam gloves (nitrile; vinyl & synthetic) totaling over 240 million medical exam gloves.

11.     Pursuant to the Initial Agreement, BRM agreed to abide by the Standard Terms of Sale published regularly by DRE on its website.

12.     The Purchase Order with DRE is governed by the "General Terms and Conditions of Sale, Delivery and Payment of DRE Health Corporation established in Missouri/Kansas and of its associated companies" (hereinafter referred to as "Terms and Conditions") found on DRE's website at the following link: www.drehealth.com/terms-conditions-of-sale. A true and accurate copy of the Terms and Conditions are attached as Exhibit B and incorporated herein by reference.

13.     Article 1 of the Terms and Conditions states:

"These General Terms and Conditions shall apply to and be incorporated into all offers by and agreements relating to the delivery of goods by or between DRE Health or any of its legal successors or companies affiliated with or owned by DRE Health or with said successors (hereinafter: the Company), and the customer or client (hereinafter: the Customer) with whom the Company contracts through any offer, purchase order or agreement."

14.     Section 20.1 of "Article 20 – disputes and applicable law" of the Terms and Conditions states:

"20.1  With regard to any and all disputes in connection with the agreement, or with regard to further agreements arising or resulting from or in connection with said agreement, the state and federal courts of Jackson county, state of Missouri, shall have exclusive jurisdiction in the first instance, unless the Company explicitly opts in writing for the competence of the court of the domicile or in the place of business of the Customer."

15.     Section 20.2 of "Article 20 – disputes and applicable law" of the Terms and Conditions states:

"20.2  The agreement, as well as any and all further agreements arising or resulting from or in connection with said agreement, shall be governed by and construed in accordance with the laws of the State of Missouri, with the exception of the stipulations of the Vienna Sales Convention or any other future international regulation on the purchase of movable goods of which the applicability may be excluded by the parties."

16.     Section 15.4.1 of the Terms and Conditions states:

4

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

15.4.1 Customer agrees to indemnify and hold Company harmless for, of and from, any loss or liability that Company may sustain by reason of Customer's breach of any purchase order or agreement or any breach of these terms or conditions or Customer's failure to comply with applicable laws, rules and regulations in connection any contract or purchase order with Company.

17.     The terms contained within the Initial Agreement also provide that BRM agreed to pay interest on past due accounts at the highest rate permitted by law, together with attorneys' fees and all other costs and expenses incurred by DRE in collecting such account.

18.     A true and accurate copy of the purchase order agreement (the "Purchase Order") between DRE and BRM dated July 30, 2021 (Purchase Order Number 2107291) is attached hereto as Exhibit C.

19.     This price in the Purchase Order represented a fire-sale bargain.

20.     DRE's principal negotiating the deal, Isaac Bawany, explained to BRM that this was a one-time bargain price that it was willing to agree to if BRM agreed to make payment immediately.

21.     Pursuant to the Purchase Order, DRE agreed to ship large quantities (over $3 million dollars' worth) of PPE equipment, specifically nitrile gloves, vinyl gloves and synthetic gloves, to BRM in exchange for BRM's promise to pay for the same.

22.     The terms of the Purchase Order state, in all capital letters, as follows: "100% PAYMENT DUE IMMEDIATELY."

23.     BRM knew that the Purchase Order price agreed to was substantially below market and that the below market price was agreed to specifically because time was of the essence and DRE needed the payment in order to clear its accounts elsewhere.

24.     DRE was ready to fully perform its responsibilities and provide the PPE product, but BRM failed to provide the funds required for such PPE equipment by the required date of July 30, 2021.

25.     BRM instead made a partial payment of about 1/3 of the total on August 5, 2021, and did not pay the balance until August 7, 2021, more than a week overdue.

26.     Unfortunately, as BRM knew was possible, BRM's failure to timely pay caused a domino effect which damaged DRE.

27.     Shortly after DRE's receipt of payment from BRM, DRE learned that the freight forwarder holding the goods at issue, a company called All-Ways Transport ("All-Ways"), had claimed the inventory and sold the product promised to BRM to a different buyer.

28.     All-Ways' decision to sell the product to a different buyer occurred as a direct result of BRM's failure to make timely payment to DRE, as All-Ways had been threatening to sell the goods if it was not promptly paid for storage fees and other items. BRM knew this was a possibility when it agreed to the Purchase Order but nevertheless failed to make timely payment.

29.     As a consequence of BRM's failure to make timely payment, and All-Ways' decision to claim the inventory and sell the product to another buyer, the product was unavailable and DRE was unable to provide it to BRM.

30.     DRE immediately informed BRM that it could not fulfill the Purchase Order and attempted to resolve the situation, caused by BRM's late payment, through some form of compromise, including providing a full refund or agreeing on some lesser amount of product.

31.     BRM refused a refund or any compromise and instead insisted on trying to enforce the contract it had breached, demanding that DRE provide the product notwithstanding the fact that All-Ways had already sold it to another buyer.

6

32.     BRM then began communicating directly with All-Ways (who had no contract or other relationship with BRM) and threatening it, demanding that All-Ways provide it with different product that it was warehousing for DRE that DRE had already promised to other buyers.

33.     BRM, by and through its representatives, made statements to All-Ways that DRE was crooked and not to be trusted.

34.     BRM's threats included sending a legally frivolous "cease and desist" letter to All-Ways, attached as Exhibit D.  BRM even went so far as to send someone in-person to threaten All-Ways' CEO at his personal residence.

35.     BRM then filed suit against All-Ways in the Southern District of New York for breach of contract, even though it has no contract with All-Ways.  (Exhibit E, "the New York Lawsuit".)  The New York Lawsuit is plainly frivolous on its face, as there is no contract between the parties to enforce, and it is based on a false allegations, including repeated claims that BRM paid the manufacturer of the product and therefore has some rights to other product made by that manufacturer when in fact it paid DRE.

36.     Upon information and belief, the New York Lawsuit was filed not because BRM thinks it might win, but instead as leverage to keep All-Ways from releasing DRE's other inventory to its other buyers.

37.     BRM has no legal claim or right whatsoever to the other inventory that All-Ways is holding for DRE that is already promised to other buyers.  But BRM's baseless threats have caused All-Ways to seek to avoid getting in the middle of the made-up dispute, and to inform DRE that it was going to put into escrow the profits due to DRE from All-Ways' sale of the goods to another buyer and to hold the other/different inventory that is due to other buyers in its warehouse pending resolution of BRM's baseless claims that it somehow has rights to these goods.

38.     DRE has more than sixty shipping containers of inventory at All-Ways' facility in California.  This inventory is promised to and under contract with other buyers.  BRM's actions in threatening All-Ways, who in turn is refusing to release inventory, is having a profoundly negative impact on DRE's business.

39.     DRE has worked hard over many years to establish business relationships and good will with these other customers that will be irreparably damaged if it is unable to fulfill its contracts with those other customers.

40.     BRM's actions are also causing DRE substantial financial damage, as its customers are owed these products that All-Ways is now holding under duress, but DRE will not be paid for them until they are released.

41.     BRM's actions are also causing a substantial negative societal impact, as this critically important PPE product is now sitting in a warehouse rather than being delivered to its rightful buyers and put to good use.

## **CONSPIRACY ALLEGATIONS**

40.     Upon information and belief, on or about March 1, 2018, BRM, Oberlander, and perhaps others tied to BRM to be named later  (collectively, "Co-Conspirators") had a meeting of the minds to wrongly and tortiously interfere in the contract between DRE and All-Ways by trying to pressure and intimidate All-ways into turning over goods belonging to DRE but held by All-Ways (as DRE's freight forwarder) using tactics of threats and extortion and by defaming DRE.

41.     The Co-Conspirators took actions in furtherance of their conspiracy, including, but not limited to, the following:

a.   Co-conspirators agreed to send Ben Oberlander to the residence of All-Way's President Solomon Weber and Oberlander made effort to intimidate Mr. Weber

8

into complying with BRM's demands, including threatening Mr. Weber with jail and other adverse consequences;

b. telephoning and emailing representatives of All-Ways legally baseless cease and desist letter to All-Ways wherein it made several false claims including that (1) it had paid the manufacturers of the inventory directly and therefore had a right to product from that manufacturer (false—it paid DRE), and (2) that it somehow had secured title to the Other Inventory by way of the Purchase Order (also false—no title ever transferred as the product was never shipped); and

c. filing a breach of contract suit against All-ways despite no privity of contract.

42.     As a result of Co-Conspirators' conspiracy, DRE suffer damages and continues to suffer harm as follows:

a.     DRE is currently selling Synthetic (Niterex) Gloves to its customers for $49.87/cs. DRE was forced to sell All-Ways 50,400 cases of this product at $15.75/cs due to BRM's breach ($1,719,648 direct loss). For Vinyl Gloves DRE's current sales price is $24.99/cs. DRE forfeited 162,400 cases to All-Ways for only $13.50/cs ($1,865,976 direct loss);

b.     In addition, prior to BRM's breach of contract and Co-Conspirator's intentionally targeting DRE's relationship with All-Ways, All-Ways confirmed in an offer in writing to extend $2.5M of credit to DRE at no interest charge for an undetermined period of time. DRE would have used this cashflow to purchase medical masks at $.35/box and resell them at market value for $1.25/box ($6,428,571.43 consequential lost profits);

c.    BRM's breach caused a delay in a critical credit line payments (which we advised BRM would occur if they delayed payment), resulting in the DRE credit limit on that specific account being reduced from $1,500,000 to $350,000 for 7 days, and damaging DRE's relationship and stellar payment history with this specific lender. DRE could have similarly used this cashflow to purchase and re-sell medical masks;

d.    BRM's breach and Co-Conspirators' conduct targeting All-Ways damaged DRE's relationship with All-Ways to the extent All-Ways held $4,000,000 worth of products from release to DRE's customers as security from BRM's claims. Due to this, DRE is open to further exposure and damages from several customers who may cancel orders or proceed with legal action. These customers were assured their shipments over a week ago based on the agreement with All-Ways based on BRM's agreement to pay on July 30th. Due to BRM's breach, DRE breached with All-Ways and DRE's reputation was tarnished with these customers; and

e.    BRM's breach and Co-Conspirators' conduct targeting All-Ways continues to cause continuing and irreparable harm to DRE as the conduct and acts of Co-Conspirators has caused All-Ways to hold DRE's product to protect itself as a result of Co-Conspirator's threats and conduct and claims.

43.    The act of one Co-Conspirator is the act of all, such that each Co-Conspirator is liable for the acts committed by each of the other Co-Conspirators.

## COUNT I – BREACH OF CONTRACT (against BRM)

44.     DRE incorporates the averments made and contained in paragraphs 1 through 43 above as if the same were fully stated herein.

45.     Due to the failure of BRM to make timely and complete payment on July 30, 2021, as required, during the subsequent week DRE's freight forwarder, unbeknownst to DRE, sold the product on its own, to a different buyer, causing the product to no longer be available for supply to Defendant.

46.     BRM materially breached its contract with DRE by failing to timely pay the required amounts pursuant to the parties' written agreement and by failing to fulfill BRM's obligations pursuant to the parties' agreement.

47.     Pursuant to the DRE Terms and Conditions, section 15.4.,1, BRM agreed to indemnify and hold DRE harmless for, of and from, any loss or liability that DRE may sustain by reason of Customer's breach of any purchase order or agreement or any breach of these terms or conditions or Customer's failure to comply with applicable laws, rules and regulations in connection any contract or purchase order with Company.

48.     DRE has demanded to be indemnified and harmless from the breach by BRM and BRM has refused such demand.

49.     Due to BRM's breach of the agreement, DRE has sustained and continues to sustain substantial direct and consequential damages.

WHEREFORE, Plaintiff prays for Judgment from the Court enforcing the terms of the Contract, for its direct and consequential damages, for its attorney fees and costs arising from BRM's breach of contract, and for such other and further relief as the Court deems fair and just.

## COUNT II – SPECIFIC PERFORMANCE FOR DISSOLUTION OR RESCISSION OF AGREEMENT (against BRM)

50.     DRE incorporates the averments made and contained in paragraphs 1 through 49 above as if the same were fully stated herein.

51.     Due to BRM's breach of the agreement, DRE has sustained and continues to sustain substantial damages.

52.     In the alternative to Count I, Plaintiff moves for specific performance of the Contract which requires its dissolution and rescission.

53.     DRE incorporates the averments made and contained in paragraphs 1 through 15 above as if the same were fully stated herein.

54.     The Terms and Conditions attached as Exhibit B state in relevant part:

> "10.4   The Company shall be entitled to repossess any goods delivered under retention of title that are still present at the Customer's forthwith and without prior notice of default, in the event that the Customer fails in the performance of his obligations. The Customer irrevocably authorizes the Company to exercise this right to repossess insofar as is necessary."

55.     The Terms and Conditions attached as Exhibit B also state in relevant part:

> "10.5  In the event that and insofar as the Company has exercised its right to repossess as referred in the preceding para graph, the agreement shall be dissolved wholly or for a proportionate part without any judicial intervention, without prejudice to the right of the Company to compensation of damage and costs. The Customer shall then be credited with the market value (which on no account can be higher than the original purchase price), reduced by the damage suffered and costs incurred by the Company."

56.     BRM failed in the performance of its obligations as it did not make timely payment immediately as required by the Purchase Order.

57.     Plaintiff is entitled to return the money received from Defendant and deduct from the reimbursed sums the damage suffered and costs incurred by the Plaintiff arising from its failure to timely make payment and its resulting breach of the written contract.

58.     Plaintiff has offered to Defendant to perform as required by the Contract and Defendant has failed to respond as of the date of this Petition and has, instead, threatened to seize certain goods belonging to DRE.

WHEREFORE, Plaintiff prays for Judgment from the Court enforcing the terms of the Contract and for such other and further relief as the Court deems fair and just.

### COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY (against BRM and INDIVIDUAL CO-CONSPIRATOR DEFENDANTS)

59.     DRE incorporates the averments made and contained in paragraphs 1 through 58 above as if the same were fully stated herein.

60.     DRE has a valid business expectancy in its contracts with other customers for the containers of inventory now being held by All-Ways.

61.     Co-Conspirators have knowledge of these contracts.

62.     Co-Conspirators have intentionally interfered in these contracts by sending a meritless cease and desist letter to All-Ways, personally threatening All-Ways' CEO at his home, and filing a frivolous lawsuit against All-Ways.

63.     Co-Conspirators actions have breached DRE's business expectancies with other customers.  Because Co-conspirator's actions have improperly induced and pressured All-Ways to hold DRE's inventory,  DRE can no longer follow through on its contracts with other customers.

64.     BRM has no justification for its actions because it has no right, interest, or claim to DRE's other inventory and no contracts with All-Ways or the manufacturers of the products.  Co-

Conspirators instead have lied and employed improper means to induce the breaches of DRE's existing contracts.

65.     Due to Co-Conspirators tortious interference with DRE's business expectancy, DRE has sustained and continues to sustain substantial damages.

66.     The act of one Co-Conspirator is the act of all, such that each Co-Conspirator is liable for the acts committed by each of the other Co-Conspirators.

67.     The Defendants interfered in the business expectancy of DRE and such interference constitutes the intentional doing of a wrongful act or acts without just cause or excuse, such that an award of punitive damages is justified.

WHEREFORE, based on the above and foregoing, DRE prays the Court grant judgment against BRM and Oberlander, jointly and severally, for an amount in excess of $25,000, for DRE's costs and reasonable attorney's fees, for punitive damages, and for any and all relief the Court deems just and equitable.

**COUNT IV**
**INTENTIONAL DEFAMATION**
**(against BRM and INDIVIDUAL CO-CONSPIRATOR DEFENDANTS)**

68.     The allegations of all prior paragraphs are incorporated herein as if fully restated.

69.     As identified herein, Defendants made numerous oral and written statements regarding plaintiff DRE.

70.     These statements were false.

71.     The reputation of DRE was damaged as a direct result of the false statements from the Defendants.

72.     The Defendants published these false statements regarding DRE with knowledge that they were false, or with reckless disregard for whether they were true or false at a time when

the Wisemans had serious doubt as to whether they were true, such that an award of punitive damages is justified.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendants, jointly and severally, in an amount in excess of $25,000.00 to be determined at trial, for interest at the highest legal rate, for his attorney fees and costs incurred herein, for punitive damages, and for such other and further relief as the Court deems just and proper.

## COUNT V
## NEGLIGENT DEFAMATION
## (against BRM and INDIVIDUAL CO-CONSPIRATOR DEFENDANTS)

73.     The allegations of all prior paragraphs are incorporated herein as if fully restated.

74.     As identified herein, Defendants made numerous oral statements regarding plaintiff DRE.

75.     These statements were false.

76.     The Defendants were negligent in determining the truth or falsity of these statements and in publishing these statements to third parties.

77.     The reputation of DRE was damaged as a direct result of the false statements from the Defendants.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendants, jointly and severally, in an amount in excess of $25,000.00 to be determined at trial, for interest at the highest legal rate, for his attorney fees and costs incurred herein, and for such other and further relief as the Court deems just and proper.

## **VERIFICATION**

STATE OF ___Kansas___ )
                         )    SS:
COUNTY OF ___Johnson___ )

     ___A. Isaac Bawany___, upon being duly sworn, states that I am an authorized representative of the Plaintiff, I have read the allegations made and contained in the above and foregoing Petition, and the same are true and accurate to the best of my knowledge.

                         A. Isaac Bawany
                         Printed Name

                         Signature of Authorized Representative of
                         Plaintiff

     Subscribed and sworn to before me this 31st day of August, 2021.

                         NOTARY PUBLIC

My Appointment Expires:

   5/17/2025

                    STATE OF
                    NOTARY  BRIAN DAVID CRANE
                    PUBLIC  My Appointment Expires
                           May 17, 2025

16

Dated:  August 31, 2021

Respectfully submitted,

**JAMES SOBBA, LLC**

*/s/     G. Edgar James*
G. EDGAR JAMES            MO# 49585
LAWRENCE E. NORDLING  MO# 62319
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone:  (816) 623-0043
ejames@jamessobba.com
lnordling@jamessobba.com
 **ATTORNEYS FOR PLAINTIFF**
**DRE HEALTH CORPORATION**

Pro Hac Vice Motion to seek pro hac admission of
the additional following counsel for Plaintiff in this
case will be filed after assignment of case number:

JONES DAY
Adam W. Wiers, Esq.
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 269-4078
Facsimile: (312) 782-8585
Email: awwiers@jonesday.com

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM



# New Customer Application

▶ **Section A – Company Information**

Date: 03/08/2021

**Account Number:** _____

*Complete Business Name and Address (Shipping Information)*       *Business Legal Name and Address (Billing Information)*

Name BRM Trades LLC                                  Name_____

Address 25 Robert Pitt Drive                         Address_____

City Monsey                                          City_____

State NY _____ Zip 10952                       State_____ Zip_____

Telephone # 8456375944                               Telephone #_____

Fax # _____                   Fax #_____

Email: abe@brmtrades.com                             Email:_____

**Type of Business:** ❑ Corporation ❑ Partnership ❑ Sole Proprietor* (Social Security # is required)          ❑ Other

Principal Owner(s) Yochonon Markovits _____     *Social Security Number(s)_____

Nature of Business _____           Years in Business_____

Name of Contact Person: _____          Contact Phone #_____

DEA# _____

_____

▶ **Attach copy of DEA license, Tax Exemption Certificate, and/or a copy of a W-9 or Business License.**

Tax Exempt: Yes___  No____ **If you are exempt from paying sales tax in your State, please supply a copy of your State sales tax exemption certificate with your completed application. Manufacturers need to incorporate the items they purchase from DRE Health into the product they produce in order to be considered exempt for those items.

The Applicant warrants the information supplied above to be true, and agrees that information set forth on this form may be shared with affiliates of DRE Health Corporation. ("DRE"), including other members of the DRE Corporation family of companies. The Applicant authorizes DRE Health Corporation, to investigate the references herein, statements or other data obtained from Applicant or from any other person pertaining to the Applicant's credit and financial responsibility. The Applicant agrees to abide by the Standard Terms of Sale published regularly by DRE, as shown on DRE's invoices, or by any other terms of sale upon which DRE and the Applicant should agree in writing. The Applicant agrees to pay interest on past due accounts at the highest rate permitted by law, together with attorneys' fees and all other costs and expenses incurred by DRE in collecting such accounts. The Applicant agrees that all payments to which DRE is entitled shall be paid to DRE at its offices in Kansas City, Missouri. The Applicant agrees that the laws of Missouri shall govern all transactions between DRE and the Applicant, that exclusive venue and jurisdiction of any dispute or suit arising between DRE and the Applicant shall lie within the courts of the State of Missouri, and the Applicant hereby consents to the jurisdiction of the Missouri courts in any such dispute or suit. NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this credit is the Federal Trade Commission, Division of Credit Practices, 6th and Pennsylvania Avenue, NW, Washington, D.C. 20580.

*You must sign this form below.*
Each of the undersigned individuals authorizes DRE Health Corporation to make inquiries with any credit reporting agency, bank or trade reference in connection with the extension or credit contemplated hereby.

Principal, Owner, or Authorized Agent              Title              Date

Signature: *Yochonon Markovits*                    CEO                03/08/2021
          _____

Signature: _____

▶ **Complete this form and email to: info@drehealth.com**

DRE Health Corporation l Kansas City, MO 66624

©2018 DRE Health Corporation. Not responsible for typographical errors.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

**General Terms and Conditions of Sale, Delivery and Payment of DRE Health Corporation established in Missouri/Kansas and of its associated companies.**

Article 1 - definitions

1.1 These General Terms and Conditions shall apply to and be incorporated into all offers by and agreements relating to the delivery of goods by or between DRE Health or any of its legal successors or companies affiliated with or owned by DRE Health or with said successors (hereinafter: the Company), and the customer or client (hereinafter: the Customer) with whom the Company contracts through any offer, purchase order or agreement.

1.2 The applicability of the Customer's general terms and conditions is hereby explicitly rejected.

1.3 Any stipulations deviating from these General Terms and Conditions shall only apply in the event that and insofar as they have been accepted by the Company in writing.

Article 2 - offer

Any offer made by the Company shall be without prejudice to the Company or a waiver if its rights under applicable law and subject to contract; this shall also apply in the event that said offer includes a period for acceptance, unless explicitly provided for to the contrary in writing.

Article 3 - agreement

3.1 An agreement, in this article also including any changes and/or additions thereto, shall not be binding until agreed upon in writing, except in the event that the Company has started the execution of the contract beforehand.

3.2 An agreement is concluded in writing at the moment when the contract is signed by the Chief Executive Officer of the Company or the board of management of the Company and by the Customer, or on the date of dispatch (by post and/or by telefax) by the Company of the written order confirmation signed by its board of management, or of the Company's invoice. Promises made by and arrangements with subordinates or agents of the Company shall not bind the Company unless these have been confirmed by the Chief Executive Officer or board of management of the Company in writing.

3.3 The contract represents the contents of the agreement completely and correctly. The order confirmation by the Company or the Company's invoice shall be considered to represent the contents of the agreement correctly unless the Customer protests against its contents forthwith in writing.

3.4 Slight deviations with customary tolerances shall be permitted at the execution of the agreement.

3.5 Unilateral cancellation from the side of the Customer shall be null and void, unless the Company agrees to such cancellation in writing.

Article 4 - notices, information and statements

Notices, information, statements and samples made or supplied by the Company, in whatever form or nature, shall only be indicative and shall never bind the Company, unless the agreement explicitly provides for the contrary.

Article 5 - confidentiality

The Customer shall observe confidentiality towards any third party in the broadest sense of the word regarding any and all business information relating to the Company, which has been brought or come to his knowledge by the Company and/or within the framework of the offer or the agreement.

Article 6 - prices

6.1 The prices stated and/or agreed upon by the Company shall be exclusive of taxes - including Value Added Tax ("B.T.W.") - and levies, and shall be based on the Terms and Conditions (of delivery) as mentioned in the following articles.

6.2 In the event no Value Added Tax ("B.T.W.") or other taxes or levies are due because the goods are destined for delivery within the North American market, those taxes shall nevertheless be charged, but shall be credited if the Customer proves that a delivery as referred to in this paragraph has indeed taken place.

6.3 Insofar as the stated and/or agreed prices are based on the weight of the goods, this weight shall be determined by the weighing carried out by the Company before the delivery, using calibrated weighing apparatus. The Customer shall have the right to be present at said weighing, provided the delivery shall not be delayed because of this. The Customer shall take the initiative thereto himself in good time.

EXHIBIT B

6.4 The Company shall have the right to increase the stated and/or agreed prices in the event of an increase in prices of goods, raw materials or parts to be obtained from third parties, wages, national insurance contributions, freight, insurance premiums or other cost price factors (including changes in foreign exchange) and charges (including import and transit duties).

In the event that a price increase takes place within three months after the conclusion of the agreement, the Customer who is also a consumer shall be entitled to dissolve the agreement.

6.5 In the event that the state d and/or agreed prices are (also) based on restitutions of levies and/or on subsidies, whereas these are not obtained for whatever reason, the Company is entitled to adjust the prices accordingly.

Article 7 - delivery – delivery period – delivery time

7 .1 Unless explicitly agreed upon otherwise, the delivery shall be made "Ex Works" (EXW) from the premises of the Company. The interpretation of the terms and conditions of deli very shall be determined by the most recent edition at the time of conclusion of the agreement of the Incoterms, as issued by the International Chamber of Commerce.

7.2 The delivery period shall commence at the latest on:

- the date of conclusion of the agreement;

- the date at which the Company has at its disposal all the documents, information, permits, exemptions, approvals, allocations, etc., needed for the delivery of the goods;

- the date of receipt of a prepayment by the Company and/or the date of provision of a security the Company is entitled to in accordance with the agreement.

7.3 The delivery period shall be based on the circumstances applicable at the time of conclusion of the agreement and on the timely delivery of the materials and goods ordered by the Company for the execution of the agreement. In the event that any delay arises as a result of changes in these circumstances or because the materials and/or goods timely ordered for the execution of the agreement have not been delivered in time, the delivery period shall be extended to such a degree as is reasonable , taking all circumstances into consideration.

EXHIBIT B

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

7.4 The delivery date of the goods shall be the moment in time when the goods, with the exception of unimportant parts, are ready for shipment, and the Company has informed the Customer thereof, or the time when the goods have left the premises of the Company to be forwarded to the Customer.

7.5 The Company shall be entitled at all times to make partial deliveries, unless explicitly agreed upon otherwise.

7.6 The delivery date shall not be considered to be a firm date, unless explicitly agreed upon otherwise. In the event of attributable exceeding of the delivery date, a notice of default shall always be required. The Customer cannot derive any rights from attributable exceeding of the delivery date insofar as a term of three (3) months is not exceeded. Customer recognizes that revisions in the schedule are inherent in the nature of the supply of Company's goods which may result in revisions in the schedule or delivery of goods. Customer agrees that Company cannot guarantee any delivery date for goods and Company shall bear no financial responsibility for delays that arise through circumstances beyond its sole control, including but not limited to delays due to abnormal weather conditions, material shortage, labor disruption, shipping disruptions, pandemic, war or other reasons beyond the Company's sole control.

7.7 In the event that the Company is in default with regard to the schedule of deliveries or the delivery date, the Customer's sole remedy shall be to dissolve the agreement and pay Company for its costs incurred or good supplied. In that case, any remaining prepaid amounts shall be refunded, without any compensation for interest, however.

Article 8 - transportation

8.1 In all cases and irrespective of the agreed terms and conditions of delivery, the Company shall be entitled to have the goods transported, unloading inclusive, at the expense and risk of the Customer, in a manner to be determined by the Company and using means of transportation at the Company's option.

8.2 The Company shall not be responsible for (the use by the Customer of) any documents (provided by the Company) for the transportation of the goods to the place of destination.

8.3 At the first request of the Company, the Customer shall provide all necessary securities for the documents needed to transport the goods to the place of destination.

8.4 In the event that circumstances beyond the control of the Company prevent the goods from being transported to or onto respectively delivered at the agreed place, or in the event that the Customer fails to take delivery of the goods, the Company shall have the right - at its option - either to take the products back or to store the goods (or have them stored) at the expense and risk of the Customer. Any costs of return shipment and storage shall be payable by the Customer, while the Customer shall furthermore be obliged to fulfil his obligations to the Company as if delivery had taken place. The costs referred to here shall be determined in advance by the Company and the Customer jointly at 15 per cent at least of the agreed price, without prejudice to the right of the Company to compensation of the actual costs should these be higher.

Article 9 - packaging

9.1 Packaging for single use shall not be taken back by the Company.

The Company shall have the right - at its option - to take back or not take back packaging for repeated use.

9.2 The Company shall have the right to charge the Customer for packaging for repeated use as a separate item on the invoice, together with the delivered goods.

9.3 In cases referred to under paragraph 2 of this article, the Company shall send a credit invoice crediting the invoiced amount to the Customer for pack aging returned to the Company at the Customer's expense upon receiving said packaging, unless the returned packaging is in a condition inferior to the one at the time of acceptance by the Customer, in which case the amount credited shall be reduced accordingly.

9.4 Only upon receipt of the credit invoice shall the Customer be entitled to deduct the value of the returned packaging, to the amount credited to him, from the amount he owes the Company .

9.5 Damage to goods caused by destruction/damage of the pack aging shall at all times be at the Customer's risk.

Article 10 - risk and transfer of property

10.1 The Customer shall bear the risk of any and all direct and indirect damage that may be caused to the goods, immediately after the goods are considered as delivered.

10.2 The Company shall retain ownership of all delivered goods until any debts payable by the Customer with regard to goods delivered or to be delivered by the Company to the Customer under any agreement, as well as with regard to any failure in the performance of such agreements by the Customer, shall be fully satisfied.

10.3 The Customer is obliged to store the goods delivered under retention of title with the necessary care, and to store them as identifiable property of the Company. The Customer shall furthermore be obliged to insure the goods against damage or loss, by whatever reason, during the period of retention of title. Said insurance shall designate the Company as (co - )insured with an independent right of claim towards insurer(s), and the Customer shall make the policies of these insurances available for inspection to the Company upon request. Upon request of the Company, all claims of the Customer on the insurers pursuant to the insurances referred to above shall be assigned to the Company, or a right of pledge shall be granted to the Company.

10.4 The Company shall be entitled to repossess any goods delivered under retention of title that are still present a t the Customer's forthwith and without prior notice of default, in the event that the Customer fails in the performance of his obligations. The Customer irrevocably authorizes the Company to exercise this right to repossess insofar as is necessary.

10. 5 In the event that and insofar as the Company has exercised its right to repossess as referred in the preceding para graph, the agreement shall be dissolved wholly or for a proportionate part without any judicial intervention, without prejudice to the right of the Company to compensation of damage and costs. The Customer shall then be credited with the market value (which on no account can be higher than the original purchase price), reduced by the damage suffered and costs incurred by the Company.

10.6 The Customer, exercising his profession or business, shall be entitled, within the framework of his business operations, to sell and deliver the goods delivered to him under retention of title to third parties. In the event of such sales, the debt payable by the Customer to the Company regarding the goods resold by the Customer shall become forth with and fully due and payable, insofar as said claim was not already due and payable.

10.7 The Customer shall always be obliged to inform third parties of the Company's retention of title. Furthermore, the Customer shall be obliged to inform the Company of the whereabouts of the goods and of the person or company said goods have possibly been sold to, if so required by the Company.

## Article 11 - payment

11.1 Unless explicitly agreed upon otherwise in writing, payment of the agreed price shall be made at the time of formation of the agreement.

11.2 Any and all payments shall be made without deduction or settlement, effectively in the currency as stated on the invoice.

In the event that the Customer alleges to have a claim on the Company with regard to the performance of the agreement, he will not be discharged from his obligation to pay in the manner agreed.

11.3 In the event that the Company has a well - founded fear that the Customer will not fulfil his obligations, the Company shall at its discretion be entitled to require sufficient security from the Customer with regard to the fulfilment of the obligations to pay, before performing or continuing to do so.

The Company shall be entitled to suspend the fulfilment of its obligations until the Customer has given said security.

11.4 In the event that the Customer has not paid at the time or within the period of time referred to in paragraph 1 of this article , he shall be in default by operation of law and without any prior notice of default being required, and he shall owe the statutory interest on the amount due and payable from the date at which the payment should ultimately have been made, without prejudice to any other rights of the Company (explicitly including the right to compensation of loss on exchange).

11.5 Any costs, both in and out of court, made by the Company with regard to non - fulfilment, overdue or non - sufficient fulfilment of his obligations by the Customer, including extrajudicial collection costs and costs of legal assistance, shall be compensated by the Customer to the Company. The Company and the Customer jointly shall deter mine the extrajudicial collection costs in advance at 15 percent of the principal sum due, without prejudice to the right of the Company to compensation of the actual costs should these be higher.

## Article 12 - return shipments

It shall not be permitted to return any goods delivered by the Company without the Company's prior written con sent. Should any return shipments take place, then this shall at all times be done at the expense and risk of the sender.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

## Article 13 - samples

The Customer shall be entitled to ask the Company to put (a) sample(s) of the goods at his disposal before delivery. If the Customer refrains from doing so, he shall be considered to agree to the quality and condition of the goods beforehand.

## Article 14 - complaints and guarantees

14.1 Complaints can only refer to quantity, weight or specification, as well as to non - conformity of the delivered goods with the sample(s) made available by the Company.

14.2 The Customer shall check forthwith the goods ultimately on arrival.

14.3 Any complaints with regard to relevant defects observable at inspection of the goods, as well as complaints in connection with quantity, weight or specification shall be made in writing within 24 hours after the delivery, and include a complete description of the alleged defects, on default of which any claim in this respect shall become void.

14.4 Any complaints with regard to other relevant defects shall be made in writing within 24 hours after their disclosure, and include a complete description of the alleged defects, however ultimately within three ( 3 ) months after the delivery, on default of which any claim in this respect shall become void.

14.5 Any claim of the Customer with regard to delivered goods shall also become void in the event that:

a. the agreement refers to the delivery of used or damage d goods;

b. the goods have been processed or the goods are otherwise not (or no longer) identifiable as originating from the Company;

c. the defects are (also) caused by normal wear and tear, inexpert and/or incorrect

treatment, use and/or storage or maintenance of the goods;

d. the Customer has not forthwith given the Company the opportunity to investigate the complaints and to fulfil its obligations;

e. the Customer has not, not in time or not sufficiently, fulfilled any obligation resting with him.

14.6 In connection with any parts and/or goods obtained from third parties which have not been treated by the Company, the Customer can only assert his claims against the Company insofar as the Company, in its turn, can assert any claims against its supplier. Should this be the case, the Company shall at any rate be discharged with respect to the Customer by transferring its rights with respect to its supplier to the Customer.

14.7 The Customer is not entitled to assert any rights against the Company in the event that he can also directly assert the rights with regard to the defects concerned against the manufacturer.

14.8 Without prejudice to the provisions in the previous paragraphs of this article, in the event of timely and justifiable com plaints, the Company shall only be obliged - at its option - to either repair the goods, proceed to redelivery or to credit the Customer for the defective goods. These General Terms and Conditions shall apply unimpaired to redelivery.

Article 15 - liability

15.1 The Company's liability under the agreement shall be limited to fulfilment of the obligations described in the agreement, in particular the obligations described in the previous article.

15.2 The Company's liability shall never cover business damage or any other indirect damage.

15.3 With the exception of gross negligence or intent, the Company shall never be liable for direct or indirect damage, including business damage, resulting from the infringement of any intellectual or industrial property rights, licenses or any other rights of third parties.

15.4 Should the Company be held liable by any third party/parties for any damage for which the Company is not liable pursuant to these General Terms and Conditions or otherwise, then the Customer shall be obliged to hold harmless and indemnify the Company against such damage and liability and to compensate it for any possibly ensuing costs, damage and interest.

15.4.1 Customer agrees to indemnify and hold Company harmless for, of and from, any loss or liability that Company may sustain by reason of Customer's breach of any purchase order or agreement or any breach of these terms or conditions or Customer's failure to comply with applicable laws, rules and regulations in connection any contract or purchase order with Company.

EXHIBIT B

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

15.5 In no event shall the Company or its officers or employees be liable for any incidental, special, punitive or consequential damages of any kind, including without limitation loss of use, productivity, reputation, financing, business opportunities or profits.  Moreover, to the fullest extent permitted by law, regardless of the theory of liability (including, without limitation breach of contract or warranty, negligence, errors or omissions, or strict liability), in no event will the Company's total aggregate liability related to any agreement or purchase order or its goods supplied or produced exceed the amount of compensation paid by Customer to the Company under any agreement or purchase order.

15.6   The limitations and exclusions of liability, as well as indemnity stipulated for the Company itself in the above paragraphs are also stipulated for and on behalf of its employees, any other person employed by it within the framework of the agreement, as well as for the persons from whom the Company obtains delivered goods and/or parts.

Article 16 - force majeure

16.1 The term force majeure in these terms and conditions shall mean any circumstance beyond the Company's control, whether or not foreseeable at the time of conclusion of the agreement, which permanently or temporarily pre vents fulfilment of the contract, and, insofar as these are not yet included, war, danger of war, civil war, revolt, strike, employees' lock - out, freight problems, fire, weather conditions preventing work and other interruptions of the Company's operations or of the operations of the Company's suppliers, as well as default of the Company's suppliers.

16.2 In the event of impediment to the performance of the agreement as a result of force majeure, the Company shall have the right without any judicial intervention, either to suspend the execution of the agreement for a maximum of four (4) months or to wholly or partially dissolve the performance or execution of the agreement, without the Company being obliged to pay any compensation.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

Article 17 - (threatening) failure

In the cases provided for by the Law, as well as in the event that the Customer does not, not in time or not sufficiently, fulfil one or more obligations arising for him from the agreement, including the provisions in these General Terms and Conditions, or in the event that there is serious doubt as to the Customer being able to fulfil his contractual obligations towards the Company, as well as in the event of bankruptcy, suspension of payments, complete or partial stoppage of work, liquidation, transfer or encumbrance of the Customer's business, including the transfer or pledging of an important part of his accounts receivable and furthermore in the event that any goods of the Customer are attached before judgement or in execution, the Company shall have the right, without notice of default or judicial intervention, either to suspend the performance or execution of the agreement for a maximum of three (3) months, or to partially or wholly dissolve the agreement, such without being liable to any compensation or guarantee, and without prejudice to any of its other rights.

Article 18 - suspension + dissolution - consequences

18.1 In the event of the Company's suspension of its obligations, it shall be authorized - and obliged at the end of the suspension period - to opt for execution or complete or partial dissolution of the agreement.

18.2 In the event of suspension or partial dissolution by virtue of the provision of the previous article, the agreed price shall be forthwith due and payable, after deduction of any costs not incurred by the Company as a result of the suspension or the partial dissolution.

In the event of partial dissolution the Customer shall furthermore be obliged, after the payment of the amount due pursuant to the previous sentence, to take possession of the goods covered by that payment, failing which the Company shall have the right to have these goods stored at the risk and expense of the Customer, or to have them sold at his expense.

18.3 In the event that the Customer returns the goods received by him from the Company after dissolution of the agreement, said returning of the goods shall at all times be at the risk and expense of the Customer, until said goods have been taken possession of by the Company.

Article 19 - general

19.1 In the event that one or more stipulations of the agreement, including stipulations of these General Terms and Conditions, are null and void or become legally invalid, the remaining provisions of the agreement shall remain in force. Parties shall consult on the stipulations which are null and void or have become legally invalid, in order to make an alternative arrangement.

19.2 Should one or more stipulations of the agreement, including the stipulations of these General Terms and Conditions, be in conflict with mandatory provisions, stipulated by or to be stipulated by a there to competent authority, these latter provisions shall be considered to have replaced the relevant stipulations of the agreement.

Article 20 - disputes and applicable law

20.1 With regard to any and all disputes in connection with the agreement, or with regard to further agreements arising or resulting from or in connection with said agreement, the state or federal courts of Jackson county, state of Missouri, shall have exclusive jurisdiction in the first instance, unless the Company explicitly opts in writing for the competence of the court of the domicile or in the place of business of the Customer.

20.2 The agreement, as well as any and all further agreements arising or resulting from or in connection with said agreement, shall be governed by and construed in accordance with the laws of the State of Missouri, with the exception of the stipulations of the Vienna Sales Convention or any other future international regulation on the purchase of movable goods of which the applicability may be excluded by parties.

-.-.-.-.-.-.-

EXHIBIT B



## INVOICE
## 279672

**+1(833)DRE-HEAL**
**+1(833)373-4325**
**Ext.700**
INFO@DREHEALTH.COM

WWW.DREHEALTH.COM

Attention:
ABE MARKOVITZ
BRM TRADES
INVOICE DATE: 07/30/21

P.O. Number: 2107291
Invoice (QUOTE) Number: 279672
Terms: 100% PAYMENT DUE IMMEDIATELY. FOB RIALTO, CA (DRE will offer free trucking from its self-owned and operated fleet to any destination in the continental US per availability. If unavailable, DRE will cover 25% of freight costs and customer will be responsible for remaining freight charges.). All sales final. Additional terms as outlined in sales terms & conditions available at www.drehealth.com. All prices are according to INCOTERMS FOB. If you choose to purchase delivery from us, INCOTERMS are DDU, SHIPPING WILL BE BILLED SEPARATELY. Buyer is responsible for all customs duties, taxes, and additional fees (no additional fees apply for this transaction). Products are not intended for invasive procedures or surgical use. Title will be transferred to BRM immediately upon receipt of payment. Storage fees at ALL-WAYS will be $400/container per month for the first 6 weeks (prorated per pickup), and $800/month after 6 weeks.

| Description | Qty | UOM | Unit Price | Total Price ($USD) |
|---|---|---|---|---|
| DRE Health Nitrile Gloves, PF, 100/BX, 10BX/CS (BLUE PACK) | 9,900 | CS | $ 40.00 | $ 396,000.00 |
| DRE Health TotalDefense X100 Vinyl Gloves PF. M=4.5g. 100/BX, 10BX/CS | 162,000 | CS | $ 11.25 | $1,822,500.00 |
| DRE HEALTH SYNTHETIC GLOVES PF M=5.0g. 100/BX, 10BX/CS | 70,000 | CS | $ 11.25 | $ 787,500.00 |
| **SIZE RATIO SHALL BE 10/40/40/10 UNLESS OTHERWISE AGREED TO IN WRITING BY BOTH PARTIES** | 68 | CTR | | |
| INSPECTION INCLUDED | | | Total Price | $3,006,000.00 |
| **TOTAL DUE IMMEDIATELY** | | | | **$3,006,000.00** |

1

Thank you for *choosing DRE*.

Sincerely yours,

A.  Isaac Bawany, Chief Executive Officer, DRE Health

EXHIBIT C

BANK ACCOUNT FOR WIRE PAYMENT:

**PAYABLE TO (ELECTRONIC PAYMENTS):**

**DRE Health Corporation**

**CHECKS DELIVER TO:**

**DRE Health Corporation**

**C/O ACCOUNTS RECEIVABLE**

**5700 W 112TH ST, STE 300,**

**LEAWOOD, KS 66211 USA**

*JPMorgan Chase Bank, N.A.*

*Account Number:* ■■■3919

*Domestic: Wire Routing Transit Number (RTN/ABA): 103000648*

*International: SWIFT/BIC code: CHASUS33 ($USD)*

*Bank Address: 270 PARK AVENUE, NEW YORK, NY 10017 UNITED STATES OF AMERICA*






3

EXHIBIT C

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM



ATTORNEYS AT LAW
THE FOUNDRY ♦ 1055 THOMAS JEFFERSON STREET, NW ♦ SUITE 500 ♦ WASHINGTON, DC 20007-4492
TELEPHONE: 202-342-5200
FACSIMILE: 202-342-5299

PRINCIPALS:
RICHARD B. BAR
BRENDAN COLLINS
DANIEL R. ELLIOTT
OLIVER M. KRISCHIK
DAVID K. MONROE
TROY A. ROLF
KEITH G. SWIRSKY

ASSOCIATES:
KRISTINE O. LITTLE
RYAN SWIRSKY
_____

OF COUNSEL:
EDWARD D. GREENBERG

WRITER'S DIRECT E-MAIL ADDRESS
BCOLLINS@GKGLAW.COM

WRITER'S DIRECT DIAL NUMBER
202-342-6793

August 20, 2021

**VIA EMAIL**

Adam W. Wiers
Jones Day
77 West Wacker
Suite 3500
Chicago, IL 60601

  **Re: Claim Again DRE Health Corporation**

Dear Mr. Wiers:

  As counsel for BRM Trades LLC ("BRM Trades") I am writing in response to your letter of August 18, 2021, and to provide notice that unless DRE Health Corporation ("DRE") and Isaac Bawany immediately rectify the damages suffered by BRM Trades as a result of DRE's and Mr. Bawany's breach of contract and fraudulent acts, BRM Trades will be forced to initiate litigation.

<u>**Relevant Facts**</u>

  On July 30, 2021 BRM Trades and DRE reached an agreement whereby BRM Trade purchased 68 containers of medical gloves from DRE (the "Goods"). The invoice, which reflects the breakdown of the transaction, and the Purchase Order is attached. Pursuant to the parties' agreement, three million, six thousand dollars ($3,006,000USD) was to be sent to DRE by BRM Trades, of which two million dollars, six thousand ($2,006,000USD) was earmarked for payment to the Chinese manufacturer of the gloves and $1 million dollars ($1,000,00USD) to DRE's freight forwarder/warehouseman All-Ways Forwarding International ("All-Ways"). Upon receipt of the $2,006,000 dollars, the Chinese manufacturer was to issue telex releases evidencing BRM

Trades ownership of the Goods, and upon receipt of the $1,0000,000, All-Ways was to permit the immediate release of the 68 containers of medical gloves.

Prior to making the agreed upon payments, BRM Trades, Isaac Bawany, the owner of DRE, confirmed in a recorded conversation that the agreement remained in place. As a result, BRM Trades made the contractually agreed upon payments. The payments were made in two tranches. The first payment was in the form of a wire in the amount of $1 million on August 5, 2021. *See* attached. The second payment of $2 million was a charge on J&B Closeouts Inc. Amex Credit Card for which BRM Trades received a credit authorization letter on August 6th. The attached credit authorization letter given to BRM Trades by Mr. Bawany clearly provides that the charge was for the attached Purchase Order and that all Goods from the Purchase Order would be released to BRM with clean title by August 10, 2021.

After the money was released, telex releases were issued and BRM Trades received title to the goods. When BRM Trades called All-Ways to obtain the release of the Goods, however, All-Ways refused to do so, asserting that it had sold the Goods to a third party. Although BRM Trades has been unable to confirm the accuracy of this representation, All-Ways asserted that they have sold not only the 68 containers at issue but an additional two containers for $3,900,000. This assertion is suspect for a number of reasons, including the fact that the Goods have a value well in excess of that amount and because All-Ways could not have sold the Goods until a telex release had been obtained evidencing clear title.

Regardless of the truth of the representation made by All-Ways, DRE and Isaac Bawany have breached their contract with BRM Trades by failing to turn over the Goods. DRE and Mr. Bawany also engaged in fraud by falsely representing that the Goods would be turned over to BRM Trades upon receipt of the $3,000,000 payment.[1] Unless DRE and Mr. Bawany immediately either turn over the Goods to BRM Trades, or pay BRM Trades for the damages arising from their wrongful conduct, BRM Sales will be forced to initiate litigation over the matter against both DRE and Mr. Bawany. A satisfactory response to this correspondence is required by the close of business on August 23, 2021 in order to forestall litigation.

---

[1] The assertion in your letter of August 18, 2021 that DRE and Mr. Bawany are somehow excused from their contractual obligations because the payments were not made by July 30, 2021 is baseless. As reflected above, the $2,000,000 payment was made by Amex Credit Card for which BRM Trades received a credit authorization letter on August 6th. If time were of the essence as you now belatedly assert, DRE and Mr. Bawany would not have authorized payment on August 6th.

EXHIBIT D

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

t BRM Trades will be notifying W

nius Medical Care that it is the own

Trades' express consent would be i

Very truly your

Brendan Collin



## One Time Credit Card Payment Authorization Form

Sign and complete this form to authorize DRE Health Corporation to make a one time debit to your credit card listed below.

By signing this form you give us permission to debit your account for the amount indicated on or after the indicated date. By authorizing this transaction, you also authorize DRE Health to bill any fees, taxes, or other liquidated, due, and owing balances on your account to the credit card provided below.

**Please complete the information below:**

I _____J&B Closeouts Inc_____ authorize DRE Health Corporation to charge my credit card
      (full name)

account indicated below for ____2,007,000_____ on or after __08/06/2021_____. This payment is for
          (amount)             (date)

____This will be payment for PO-392856-BR that we received from BRM to fund PO# 2107291
All the goods from this PO will be release to BRM with clean title by 8/10/2021
      (description of goods/services)

Billing Address __51 Forest road 316-55_____     Phone#____845-637-5944_____

City, State, Zip _____Monroe, NY 10950_____     Email___lipabrach@gmail.com_____

Account Type:   Visa      MasterCard      AMEX     Discover

Cardholder Name __J&B Closeouts Inc_____

Account Number _____372721925175003_____ ___

Expiration Date ___07/26_____

CVV2 (3 digit number on back of Visa/MC, 4 digits on front of AMEX) _210_5672

SIGNATURE _____     DATE _____8/06/2021

I authorize DRE Health Corp or its affiliates/parents/subsidiaries to charge the credit card indicated in this authorization form according to the terms outlined above. This payment authorization is for the goods/services described above, for the amount indicated above plus any applicable fees, taxes, or other past due balances on my account. I certify that I am an authorized user of this credit card and that I will not dispute the payment with my credit card company; so long as the transaction corresponds to the terms indicated in this form.

EXHIBIT D

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM



## INVOICE 279672

+1(833)DRE-HEAL
+1(833)373-4325
Ext.700
INFO@DREHEALTH.COM

WWW.DREHEALTH.COM

Attention:
ABE MARKOVITZ
BRM TRADES
INVOICE DATE: 07/30/21

P.O. Number: 2107291
Invoice (QUOTE) Number: 279672
Terms: 100% PAYMENT DUE IMMEDIATELY. FOB RIALTO, CA (DRE will offer free trucking from its self-owned and operated fleet to any destination in the continental US per availability. If unavailable, DRE will cover 25% of freight costs and customer will be responsible for remaining freight charges.). All sales final. Additional terms as outlined in sales terms & conditions available at www.drehealth.com. All prices are according to INCOTERMS FOB. If you choose to purchase delivery from us, INCOTERMS are DDU, SHIPPING WILL BE BILLED SEPARATELY. Buyer is responsible for all customs duties, taxes, and additional fees (no additional fees apply for this transaction). Products are not intended for invasive procedures or surgical use. Title will be transferred to BRM immediately upon receipt of payment. Storage fees at ALL-WAYS will be $400/container per month for the first 6 weeks (prorated per pickup), and $800/month after 6 weeks.

| Description | Qty | UOM | Unit Price | Total Price ($USD) |
|---|---|---|---|---|
| DRE Health Nitrile Gloves, PF, 100/BX, 10BX/CS (BLUE PACK) | 9,900 | CS | $ 40.00 | $ 396,000.00 |
| DRE Health TotalDefense X100 Vinyl Gloves PF. M=4.5g. 100/BX, 10BX/CS | 162,000 | CS | $ 11.25 | $1,822,500.00 |
| DRE HEALTH SYNTHETIC GLOVES PF M=5.0g. 100/BX, 10BX/CS | 70,000 | CS | $ 11.25 | $ 787,500.00 |
| **SIZE RATIO SHALL BE 10/40/40/10 UNLESS OTHERWISE AGREED TO IN WRITING BY BOTH PARTIES** | 68 | CTR | | |
| INSPECTION INCLUDED | | | Total Price | $3,006,000.00 |
| **TOTAL DUE IMMEDIATELY** | | | | **$3,006,000.00** |

EXHIBIT D

**BRM Trades LLC**
25 Robert Pitt Dr Suite 204,
Monsey, New York 10952
Phone:
info@brmtrades.com

# PURCHASE ORDER

P.O. # 2107291
ORDER DATE: 07/29/2021

**VENDOR**  DRE Health Corporation
5700 W 112th St, Ste 300
Leawood, Kansas 66211

**SHIP TO**

| SHIPPING SERVICE | | SHIPPING METHOD | DELIVERY DATE | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| QUANTITY | ITEM # | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|---|
| 162000 | 45 Containers Of 3600 Cases | Cases Of 10 Boxes DRE Health Vinyl Exam Gloves - 10% S, 40% M, 40% L, 10% XL | $11.25 | $1,822,500.00 |
| 70000 | 20 Containers Of 3500 Cases | Cases Of 10 Boxes DRE Health Niterex Exam Gloves - 10% S, 40% M, 40% L, 10% XL | $11.25 | $787,500.00 |
| 9900 | 3 Containers Of 3500 Cases | Cases Of 10 Boxes DRE Health Nitrile Exam Gloves - 10% S, 40% M, 40% L, 10% XL | $40.00 | $396,000.00 |

Subject to:
- Confirmation of manufacturer goods are released to BRM Trades
- Confirmation of All-Ways Forwarding goods are released to BRM Trades
- Upon payment BRM Trades becomes title holder
- Receiving correct documentation, Quality Inspection/UCC/BOL
- There will be no loading/unloading charges,
there will be no any additional charges/hidden fees for BRM Trades, BRM Trades has 4 weeks
free storage at All-Ways which is the minimum time needed to arrange distribution for that many containers
after the 4 weeks, BRM will pay for storage.
- Multiple Shipping addresses will be provided, as agreed DRE Health trucking will deliver for free.
If they aren't available 25% shipping cost will be covered by DRE Health

| | |
|---|---|
| Subtotal | $3,006,000.00 |
| Sales Tax | $0.00 |
| Shipping Charge | $0.00 |
| Order Total | $3,006,000.00 |

_____
Vendor Signature

*Yochonon Markovits*
Customer Signature

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| BRM Trades, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 21-cv-07151 |
| | ) | |
| -against- | ) | **COMPLAINT** |
| | ) | |
| All-Ways Forwarding Int'l Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff BRM Trades, LLC (hereinafter "BRM"), by and through its undersigned attorney, hereby submits this Complaint against Defendant All-Ways Forwarding Int'l Inc. (hereinafter "All-Ways"). In support of its Complaint, Plaintiff BRM alleges as follows:

**PARTIES**

1.      Plaintiff BRM is a trading company that specializes in sales to manufacturing companies.

2.      BRM is a New York company that has its primary office in New York, New York.

3.      Defendant All-Ways is a non-vessel operating common carrier ("NVOCC") licensed by the Federal Maritime Commission ("FMC").  All-Ways provides a variety of transportation services for entities shipping cargo internationally.

**JURISDICTION AND VENUE**

4.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

5.     This Court has subject matter jurisdiction over the case under Title 28 U.S.C. §1333.

6.     This Court also has subject matter jurisdiction over the case under Title 28 U.S.C. § 1332 as there is complete diversity between Plaintiff and Defendant.

7.     Personal jurisdiction and venue are proper in this court as the terms and conditions of All-Ways bills of lading under which the cargo at issue moved contains a forum selection clause providing that the United States District Court for the Southern District of New York shall have exclusive jurisdiction and venue for suits arising thereunder.

## FACTS

8.     DRE Health Corporation ("DRE Health") is a manufacturer of medical supplies, equipment, devices, and instruments.

9.     DRE Health transported 68 containers of medical gloves (the "Goods") from China to the United States.

10.     DRE Health engaged All-Ways to transport the Goods on DRE Health's behalf. All-Ways had previously provided transportation services on behalf of DRE Health on numerous occasions.

11.     After the Goods arrived in the United States, DRE Health ran into financial difficulties, and as a result, negotiated a sale of the Goods to BRM.

12.     On or about July 30, 2021, BRM Trades and DRE Health reached an agreement for BRM to purchase the Goods from DRE (the "Agreement").

13.     Pursuant to the Agreement between BRM and DRE Health, DRE Health transferred valid title to the Goods to BRM in exchange for an Agreement to have BRM pay off

2

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

certain amounts owed to the Chinese manufacturer ("Manufacturer") of the Goods, and to have BRM pay down a portion of the outstanding invoices owed by DRE to All-Ways.

14.     Once payment had been issued to Manufacturer, the Manufacturer was to issue telex releases for the Goods.

15.     Upon receipt of the payment of a portion of the outstanding invoices owed to All-Ways by DRE, All-Ways was to immediately release the Goods to BRM.

16.     All-Ways was fully aware of and a party to the Agreement between DRE and BRM.

17.     Until it received telex releases from the Manufacturer, All-Ways was not in a position to exercise its purported lien rights or sell the Goods. Because of the balance owed, the Manufacturer was unwilling to issue such telex releases until it was paid in full for the Goods.

18.     All-Ways also refused to release the Goods until certain of its outstanding invoices for transportation-related services had been paid.

19.     Pursuant to the Agreement between BRM, DRE Health, and All-Ways, BRM paid in excess of two million dollars ($2,000,000) to the Manufacturer to obtain telex releases of the goods.

20.     BRM also paid 1 million dollars ($1,000,000) to DRE for DRE to pay down invoices owed to All-Ways.

21.     The payments made by BRM were in exchange for the immediate release of the Goods.

22.     BRM confirmed with DRE Health and All-Ways that the Goods would be released to BRM upon BRM's payment of the amounts set forth in paragraphs 19 and 20 herein.

EXHIBIT E

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

23.     Upon receipt of the payment in excess of $2,000,000, the Manufacturer issued the telex releases.

24.     Further, as agreed, BRM paid DRE Health $1,000,000 to be used to pay down All-Ways' outstanding invoices.

25.     When, as reflected in the Agreement, BRM sought the immediate release of the Goods, All-Ways refused to do so, accepting only a portion of the $1,000,000 paid to DRE and instead deciding to sell the goods, to which BRM had valid title, to a third party.

26.     BRM has fully performed under the Agreement.

27.     Despite demand having been made, All-Ways has refused to release the Goods in its possession to BRM.

28.     BRM has suffered damages in the form of money it paid to the Manufacturer, and to DRE Health for the release of the Goods, which Goods have been wrongfully withheld by All-Ways.

29.     BRM also has suffered lost profits because of its inability to sell its Goods to a third party as result of All-Ways refusal to release BRM's Goods to BRM.

30.     The Goods have a value in excess of $6,000,000.

31.     The Defendants also owe BRM its reasonable attorneys' fees and costs incurred in seeking to collect amounts it is owed.

## COUNT I (BREACH OF CONTRACT)

32.     BRM incorporates by reference paragraphs 1-31 as if set forth fully herein.

33.     BRM fully performed under the contracts at issue.

34.     Pursuant to the Agreement, BRM issued payment to the Manufacturer in excess of $2,000,000 and issued payment to DRE Health in the amount of $1,000,000 to be used to pay down a portion of All-Ways' outstanding invoices.

35.     BRM made such payments in reliance upon All-Ways' representation that BRM's Goods would immediately be released to BRM if such payments were made.

36.     Despite the fact that BRM has valid title to the Goods, All-Ways is refusing to release the Goods, and instead is seeking to sell, or has sold, the Goods to a third-party.

37.     All-Ways is not entitled to assert liens on goods in its possession, which liens are in excess of the transportation charges arising from its transportation of the Goods.

38.     All-Ways is in breach of the Agreement to immediately release BRM's Goods to it upon BRM making the agreed upon payments.

39.     BRM has suffered damages in the form of money it paid to the Manufacturer, and to DRE Health for the release of its goods, which Goods have been wrongfully withheld by All-Ways.

40.     BRM has suffered lost profits because of its inability to sell its Goods to a third party as result of All-Ways refusal to release BRM's Goods to BRM, which Goods have a value in excess of $6,00,000.

41.     To the extent that All-Ways has sold BRM's Goods to a third party, BRM is entitled to collect all money received by All-Ways pursuant to such sale.

42.     The Defendants owe BRM its reasonable attorneys' fees and costs incurred in seeking to collect amounts BRM is owed.

## <u>COUNT II (FRAUD)</u>

43.     BRM incorporates by reference paragraphs 1-42 as if set forth fully herein.

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

44.     A party has a cause of action for common law fraud when (1) representation of fact was made, (2) the representation was material and the person relied on the representation, (3) the person making the representation knew of its falsity, and (4) the injured party suffered as a result of the reliance of such false representation

45.     Pursuant to the Agreement, BRM issued payment to the Manufacturer to obtain telex releases of the Good.

46.     Pursuant to the Agreement, BRM issued payment to DRE Health in the amount of $1,000,000 to be used to pay down a portion of All-Ways' outstanding invoices.

47.     All-Ways represented and confirmed to BRM that once it received payment it immediately would release the Goods to BRM.

48.     Instead of complying with the Agreement, All-Ways did a "bait and switch" and refused to release the Goods. Once payment had been issued by BRM, All-Ways accepted only a portion of the $1,000,000 paid to DRE and instead decided to sell the goods, to which BRM had valid title, to a third party for a substantial profit.

49.     Defendant knowingly and intentionally falsely represented to BRM that it would release the Goods to BRM once payment had been issued.

50.     BRM reasonably relied on Defendant's misrepresentations.

51.     Defendant's conduct consisted of intentional misrepresentations and deceit, with the intention to deprive BRM of its property, legal rights, or otherwise cause injury.

52.     BRM has suffered damages in the form of money it paid to the Manufacturer, and to DRE Health for the release of its goods, which Goods have been fraudulently withheld by All-Ways.

53.     BRM has suffered lost profits as a result of its inability to sell its Goods to a third party due to All-Ways' fraudulent refusal to release BRM's Goods to BRM, which Goods have a value in excess of $6,000,000.

54.     To the extent that All-Ways has sold BRM's Goods to a third party, BRM is entitled to collect all money received by All-Ways pursuant to such sale of BRM's Goods.

### COUNT III (INJUNCTIVE RELIEF)

55.     BRM incorporates by reference paragraphs 1-54 as if set forth fully herein.

56.     Defendant should be ordered to immediately turn over the Goods to BRM as BRM made payments to the Manufacturer and DRE Health in reasonable reliance upon the fact All-Ways would immediately turn over the Goods to BRM upon BRM making such payments.

57.     All-Ways should be enjoined from selling BRM's Goods to a third party.

58.     If All-Ways has sold BRM's Goods to a third party, All-Ways should be ordered to immediately turn over the funds collected to BRM.

59.     All-Ways should be enjoined from turning over any funds collected from a sale of the Goods to DRE Health.

60.     Absent injunctive relief, BRM will suffer irreparable harm as it will lose possession of its Goods, which have a value of in excess of $6,000,000.

61.     Absent injunctive relief, BRM will suffer irreparable harm if the funds are not paid over to BRM and instead paid over to DRE Health as DRE Health has financial difficulties and BRM will not be in a position to recover funds from DRE Health to which it is legally entitled.

**WHEREFORE**, Plaintiff, BRM seeks recovery from All-Ways for:

EXHIBIT E

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

A.      Damages in the form of money it paid to the Manufacturer, and to DRE Health, for the release of its goods, which Goods have been wrongfully withheld by All-Ways:

B.      Lost profits as a result of BRM's inability to sell its Goods, which have a value in excess of $6,000,000 to a third party as result of All-Ways refusal to release BRM's Goods to BRM;

C.      Injunctive relief, compelling the immediate turnover of the Goods in its possession;

D.      Injunctive relief, compelling the immediate turnover of any funds collected from the sale of BRM's Goods;

E.      Attorney fees;

F.      Court costs; and

G.      Such other relief as the Court deems appropriate.


Dated: August 24, 2021

Brendan Collins
Attorney Bar Code: 5544929
GKG LAW, P.C.
1055 Thomas Jefferson Street, NW
Suite 500
Washington, DC  20007
Telephone: 202-342-6793
Facsimile:  202-342-5219
Email: bcollins@gkglaw.com

*Attorney for Plaintiff BRM Trades, LLC*

EXHIBIT E

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM



September 3, 2021

G. Edgar James
(816) 623-0544 Direct
(816) 853-0403 Mobile
ejames@jamessobba.com

Clerk
Circuit Court of Jackson County
412 East 12th Street
Kansas City, MO 64106

     **Re:**    *DRE Health Corporation v. BRM Trades, LLC*

Dear Clerk:

     Pursuant to Missouri Supreme Court Rule 54.16, please issue Summons to Defendant BRM Trades, LLC via service by mail and returned to me for service of the First Amended Verified Petition for Damages on its registered agent:

BRM TRADES, LLC
Serve Registered Agent:
VCORP Agent Services, Inc.
25 Robert Pitt Drive, Suite 204
Monsey, NY 10952

Thank you.

     Sincerely,

G. Edgar "Eddie" James

EJ:cs

ONE MAIN PLAZA / 4435 MAIN STREET, SUITE 910 / KANSAS CITY, MO 64111 / 816.623.0544 / JAMESSOBBA.COM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   LAWRENCE EDWARD NORDLING, Attorney for Plaintiff
SERVICE EMAIL:    lnordling@jamessobba.com

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:01 PM

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:12 PM



September 3, 2021

G. Edgar James
(816) 623-0544 Direct
(816) 853-0403 Mobile
ejames@jamessobba.com

Clerk
Circuit Court of Jackson County
412 East 12th Street
Kansas City, MO 64106

      **Re:**    ***DRE Health Corporation v. BRM Trades, LLC***

Dear Clerk:

      Pursuant to Missouri Supreme Court Rule 54.16, please issue Summons to Defendant Chaim Benjamin Oberlander via service by mail and returned to me for service of the First Amended Verified Petition for Damages at:

      Chaim Benjamin Oberlander
      7091 San Sebastian Circle
      Boca Raton, FL 33433-1014

      Thank you.

                    Sincerely,

                    G. Edgar "Eddie" James

EJ:cs

ONE MAIN PLAZA   4435 MAIN ST, SUITE 910   KANSAS CITY, MO 64111   816.623.0544   JAMESSOBBA.COM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:    LAWRENCE EDWARD NORDLING, Attorney for Plaintiff
SERVICE EMAIL:    lnordling@jamessobba.com

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:12 PM

Electronically Filed - Jackson - Kansas City - September 03, 2021 - 04:12 PM



September 3, 2021

G. Edgar James
(816) 623-0544 Direct
(816) 853-0403 Mobile
ejames@jamessobba.com

Clerk
Circuit Court of Jackson County
412 East 12th Street
Kansas City, MO 64106

      **Re:**    *DRE Health Corporation v. BRM Trades, LLC*

Dear Clerk:

      Pursuant to Missouri Supreme Court Rule 54.16, please issue Summons to Defendant Chaim Benjamin Oberlander via service by mail and returned to me for service of the First Amended Verified Petition for Damages at:

      Chaim Benjamin Oberlander
      7091 San Sebastian Circle
      Boca Raton, FL 33433-1014

      Thank you.

              Sincerely,

              G. Edgar "Eddie" James

EJ:cs

ONE MAIN PLAZA • 4435 MAIN STREET, SUITE 910 • KANSAS CITY, MO 64111 • 816.623.0404 • JAMESSOBBA.COM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOHN M. TORRENCE | Case Number: 2116-CV18224 |
|---|---|
| Plaintiff/Petitioner:<br><br>DRE HEALTH CORPORATION<br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>G EDGAR JAMES<br>JAMES SOBBA, LLC<br>4435 MAIN STREET, SUITE 910<br>KANSAS CITY, MO 64111 |
| Defendant/Respondent:<br><br>BRM TRADES, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to: **CHAIM BENJAMIN OBERLANDER**
**Alias:**

**7091 SAN SEBASTIAN CIRCLE**
**BOCA RATON, FL 33433-1014**

**7050 W PALMETTO PARK ROAD**
**SUITE 15365**
**BOCA RATON, FL 33433**



**COURT SEAL OF**

**JACKSON COUNTY**

      You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also serve this answer upon Plaintiff's/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

___13-SEP-2021___
Date Issued

_____
Clerk

Further Information:

## Directions to Clerk

      The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

OSCA (2-2017) SM80 (JAKSFCM) *For Court Use Only: Document ID# 21-SFCM-83*        1 of 2

# SUMMONS/GARNISHMENT SERVICE PACKETS
# ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org  →  Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


                                        Circuit Court of Jackson County

Revised 7/3/13                Service Information - Attorney

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

| | | |
|---|---|---|
| DRE HEALTH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2116-CV18224 |
| | ) | |
| BRM TRADES, LLC, and | ) | Division: 14 |
| CHAIM BENJAMIN OBERLANDER | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF SERVICE OF PETITION

I, Connie Stahl of lawful age, am the paralegal for G. Edgar James, attorney for the Plaintiff

in the above entitled case, and I make this affidavit pursuant to the provisions of Mo. R. Civ. P.

54.13(b)(1);

That I caused a copy of the Petition to be served upon defendant BRM Trades, LLC counsel

Nathan Garrett, of Graves Garrett, LLC as sent to counsel on the attached Exhibit 1.

_____

Connie Stahl

| | | |
|---|---|---|
| State of Missouri | ) | |
| | ) | ss. |
| County of Jackson | ) | |

Subscribed and sworn to before the undersigned on September 21, 2021.

My Appointment Expires:

May 12, 2025

_____

Notary Public

Megan L. Burns
NOTARY PUBLIC, NOTARY SEAL
STATE OF MISSOURI
Jackson County
COMMISSION # 14629267
MY COMMISSION EXPIRES: May 12, 2025

Respectfully submitted,

JAMES SOBBA, LLC

*/s/   G. Edgar James*
G. EDGAR JAMES    MO#49585
LAWRENCE E. NORDLING MO# 62319
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone:  (816) 623-0043
ejames@jamessobba.com
lnordling@jamessobba.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system.

/s/ G. Edgar James

2

# EXHIBIT B

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

| **Plaintiff(s):** | **Defendant(s):** |
|---|---|
| First Listed Plaintiff: | First Listed Defendant: |
| DRE HEALTH CORPORATION ; | BRM TRADES, LLC ; |
| 1 Citizen of This State; | 5 Incorporated and Principal Place of Business in Another State; New York |
| **County of Residence:** Outside This District | **County of Residence:** Outside This District |
| | |
| | Additional Defendants(s): |
| | Chaim Benjamin Oberlander ; |
| | 2 Citizen of Another State; Florida |

**County Where Claim For Relief Arose:** Jackson County

**Plaintiff's Attorney(s):**

G. Edgar James ( DRE HEALTH CORPORATION)
James Sobba, LLC
4435 Main Street, Suite 910
Kansas City, Missouri
**Phone:** 816.623-0043
**Fax:**
**Email:** ejames@jamessobba.com

Lawrence E. Nordling ( DRE HEALTH CORPORATION)

4435 Main Street, Suite 910
Kansas City, Missouri
**Phone:** 816.623-0043
**Fax:**
**Email:** lnordling@jamessobba.com

Adam W. Wiers ( DRE HEALTH CORPORATION)
Jones Day
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
**Phone:** 312.269-4078
**Fax:** 312.782-8585
**Email:** awwiers@jonesday.com

**Defendant's Attorney(s):**

Kate Gasper ( BRM TRADES, LLC)
Lathrop GPM
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
**Phone:** 816.460-5640
**Fax:** 816.292-2001
**Email:** kate.gasper@lathropgpm.com

**Basis of Jurisdiction:** 4. Diversity of Citizenship

**Citizenship of Principal Parties (Diversity Cases Only)**

**Plaintiff:** 1 Citizen of This State

**Defendant:** 5 Incorporated and Principal Place of Business in Another State

## Origin: 2. Removed From State Court

**State Removal County:** Jackson County

**State Removal Case Number:** 2116-CV18224

**Nature of Suit:** 190 All Other Contract Actions

**Cause of Action:** This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

**Requested in Complaint**

**Class Action:** Not filed as a Class Action

**Monetary Demand (in Thousands):** 75,000

**Jury Demand:** Yes

**Related Cases:** Is NOT a refiling of a previously dismissed action

---

**Signature:** /s/ Kate O'Hara Gasper

**Date:** 10/12/2021

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.