**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DRE HEALTH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:21-cv-00745-SRB |
| vs. | ) | |
| | ) | |
| BRM TRADES, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND BRM TRADES LLC'S COUNTERCLAIM
TO PLAINTIFF'S FIRST AMENDED PETITION**

BRM Trades, LLC ("BRM") and Chaim Benjamin Oberlander ("Oberlander") (collectively the "Defendants") hereby answers the First Amended Petition of DRE Health Corporation ("DRE" or "Plaintiff") as follows:

1.     The Defendants have insufficient information to admit or deny paragraph 1 of the First Amended Petition and therefore deny same.

2.     Admit.

3.     Defendants admit that Oberlander resides in Florida but deny that he committed tortious acts in furtherance of a civil conspiracy.

4.     BRM denies that it finalized any business transaction with DRE in Missouri. BRM has never entered into Missouri.

5.     The Defendants assert that Exhibit A speaks for itself.

6.     The Defendants assert that Exhibit A speaks for itself. The Defendants further assert that, Exhibit B, the Terms and Conditions purportedly attached to the New Customer Application, were not provided to the Defendants.

1

7.      Deny.

8.      The Defendants have insufficient information to admit or deny paragraph 8 of the First Amended Petition and therefore deny same.

9.      The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants. The Defendants have insufficient information to admit or deny whether what DRE refers to as its Standard Terms are published regularly on DRE's website. The Defendants admit that they executed a new Customer Application.

10.     The Defendants admit that the parties entered into a Purchase Order on July 30, 201 and that title to the goods would be transferred to BRM immediately upon receipt of payment.

11.     BRM admits that it entered into an agreement with DRE dated July 30, 2021. The Defendants further admit that the Invoice states that Title to the goods will be transferred to BRM immediately upon receipt of payment.   The Defendants deny that the invoice refers to DRE's Standard Terms of Sale. The Defendants have insufficient information to admit or deny whether what DRE refers to as its Standard Terms are published regularly on DRE's website.

12.     The Defendants deny that the invoice refers to DRE's General Terms and Conditions of Sale, Delivery and Payment. The Defendants have insufficient information to admit or deny whether what DRE refers to as its Standard Terms are published regularly on DRE's website. The Defendants assert that Exhibit B speaks for itself.

13.     The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.  The Defendant further assert that Exhibit B speaks for itself.

14.     The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.  The Defendant further assert that Exhibit B speaks for itself.

15.     The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.  The Defendant further assert that Exhibit B speaks for itself.

16.     The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.  The Defendant further assert that Exhibit B speaks for itself.

17.     The Defendants deny that BRM has any past due account. deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.

18.     The Defendants amid that a New Customer application was executed by the Defendants.

19.     Deny.

20.     Deny.

21.     The Defendants assert that pursuant to the Purchase Order, BRM agreed to make certain payments, which BRM made, in exchange for the release of goods to BRM, which release was not made.  The Defendants further assert that the Purchase Order speaks for itself.

22.     The Defendants assert that Exhibit C speaks for itself.

23.     Deny.

24.     Deny.

25.     Deny. On August 6, 2021, Bawany and DRE issued a credit card authorization to BRM for payment of $1,000,000 to DRE, which BRM immediately executed. At that time, DRE

3

and Bawany explicitly assured BRM that the deal was going forward and that BRM would receive the Goods at issue.

26.     Deny.

27.     Deny.

28.     Deny.

29.     Deny.

30.     Deny.

31.     Deny.

32.     Deny.

33.     Deny.

34.     Deny.

35.     Deny.

36.     Deny.

37.     Deny.

38.     Deny.

39.     Deny.

40.     Deny.

41.     Deny. Mr. Oberlander had a telephone conversation with Solomon Weber who invited Mr. Oberlander to his summer home to discuss the matter. Over the course of a meal, Mr. Oberlander and Mr. Weber had a civil discussion of the matter. No threats were made by Mr. Oberlander.

4

## CONSPIRACY ALLEGATIONS

40.     DRE has two paragraphs 40 and 41. (Second paragraph 40.) Deny.

41.     (Second paragraph 41.) Deny.

42.     Deny.

43.      Paragraph 43 constitutes a legal conclusion to which no response is required. To the extent a response is required, the Defendants deny Paragraph 43.

## COUNT I

44.     The Defendants incorporate their responses to Paragraphs 1-43, including duplicate paragraphs 40 and 41 above.

45.     Deny.

46.     Deny.

47.     The Defendants deny that BRM breached the Agreement. The Defendants admit that BRM refused to indemnify DRE.

48.     The Defendants deny that BRM breached the Agreement. The Defendants admit that BRM refused to indemnify DRE.

49.     Deny.

## COUNT II

50.     The Defendants incorporate their responses to Paragraphs 1-49, including duplicate paragraphs 40 and 41.

51.     Deny.

52.     The Defendants deny that DRE has a basis for dissolution and rescission.

53.     The Defendants incorporate their responses to paragraphs 1-15.

47726314v1

54.     The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.  The Defendant further assert that Exhibit B speaks for itself.

55.     The Defendants deny that the Terms and Conditions were attached to the New Customer Application and were provided to the Defendants.

56.     Deny.

57.     Deny.

58.     Deny.

## COUNT III

59.     The Defendants incorporate their responses to Paragraphs 1-58, including duplicate paragraphs 40 and 41.

60.     Deny.

61.     Deny.

62.     Deny.

63.     Deny.

64.     Deny.

65.     Deny.

66.     Paragraph 66 constitutes a legal conclusion to which no response is required. To the extent a response is required, Defendants deny Paragraph 66.

67.     Deny.

## COUNT IV

68.     The Defendants incorporate their responses to Paragraphs 1-67, including duplicate paragraphs 40 and 41.

6

69.     Deny.

70.     Deny.

71.     Deny.

72.     Deny.

**COUNT V**

73.     The Defendants incorporate their responses to Paragraphs 1-72, including duplicate paragraphs 40 and 41.

74.     Deny.

75.     Deny.

76.     Deny.

77.     Deny.

**AFFIRMATIVE DEFENSES**

1.      The First Amended Petition fails to state a claim for which relief can be granted.

2.      The First Amended Petition is barred by estoppel, waiver, and unclean hands.

3.      The First Amended Petition is barred by the doctrine of laches.

4.      The First Amended Petition is barred by the Plaintiff's failure to perform its contractual obligations.

5.      The First Amended Petition for damages was caused by superseding or intervening acts or omissions attributable to persons or entities over which the Defendants had no control and over whom the Defendants had no legal responsibility.

6.      The First Amended Petition for damages is barred and/or limited by Plaintiff's failure to mitigate damages.

7

7.     The First Amended Petition Counterclaim for damages is barred and/or limited by the Defendants set off and/or recoupment rights.

8.     The Defendants intend to rely on such other affirmative defenses as may become available or apparent in the course of discovery and, therefore, reserve their right to amend the Answer to assert such defenses.

## BRM'S COUNTERCLAIMS AGAINST
## DRE HEALTH CORPORATION AND ISAAC BAWANY

BRM Trades, LLC ("BRM" or "Counter-plaintiff") asserts the following counterclaims against DRE Health Corporation ("DRE") and Isaac Bawany ("Bawany") collectively the Counter-Defendants as follows:

1.     Counter-Plaintiff BRM is a trading company that specializes in sales to manufacturing companies.

2.     BRM is a New York company that has its primary office in New York, New York.

3.     DRE is a manufacturer of medical supplies, equipment, and instruments, including medical gloves.

4.     Isaac Bawany ("Bawany") is the Chief Executive Officer of DRE.

5.     DRE and BRM have entered into contracts regarding the sale of medical gloves.

6.     As the result of DRE's breach of the terms of sales, dated March 8, 2021, BRM and DRE entered into a Settlement Agreement, whereby DRE agreed to pay BRM Three Million, Twenty-Eight Thousand, Five Hundred and Fifty Dollars ($3,028,550.00). *See* Exhibit A to Counterclaim ("Ex. A").

7.     Bawany also executed a Personal Guarantee whereby he personally guaranteed 75% of the amount owed to BRM under the Settlement Agreement. *See* Exhibit B to Counterclaim ("Ex. B").

8

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the case under Title 28 U.S.C. § 1332 as there is complete diversity between Counter-Plaintiff BRM and Counter-Defendants, DRE and Bawany.

9. Personal jurisdiction and venue are proper in this Court as the terms of the Settlement Agreement and Personal Guarantee contains a forum selection clause providing that suits arising thereunder shall be brought in the Western District of Missouri.

10. Accordingly, DRE, Bawany and BRM have consented to jurisdiction of the claims at issue in the Western District of Missouri.

## FACTS

A.      **Settlement Agreement and Guarantee**

11. DRE and BRM entered into a contract regarding the sale of medical gloves dated March 8, 2021.

12. The sales contract included a buy-back clause whereby DRE was obligated to buy back the gloves from BRM at a specified price.

13. DRE breached the contract due to its inability to comply with the buy-back clause.

14. As the result of DRE's breach of the terms of the March 8, 2021 sales contract, BRM and DRE entered into a Settlement Agreement, whereby DRE agreed to pay BRM Three Million, Twenty-Eight Thousand, Five Hundred and Fifty Dollars ($3,028,550.00). Ex. A.

15. The Settlement Agreement provided that DRE would make an initial payment of Two Hundred Seventy-Eight Thousand, Five Hundred Fifty Dollars ($278,550) on August 1, 2021 and Two Hundred Fifty Thousand Dollars ($250,000) on each subsequent month beginning on the first day of September of 2021 until the full amount was paid. Ex. A.

9

16.     The Settlement Agreement provides for a late charge of 5% if payment is not received by the fifth day of the month it is due.

17.     The Settlement Agreement further provides for recovery of attorneys' fees if BRM has to seek collection of amounts due.

18.     Bawany executed a Personal Guarantee whereby he personally guaranteed 75% of the amount owed under the Settlement Agreement. Ex. B.

19.     DRE breached the Settlement Agreement by failing to make the initial payment of Two Hundred Seventy-Eight Thousand, Five Hundred Fifty Dollars ($278,550) until one month late on September 3, 2021. No late fee was included by DRE as was required pursuant to the Settlement Agreement.

20.     DRE failed to make the scheduled payments of Two Hundred Fifty Thousand Dollars ($250,000) for the months of September and October of 2021.

21.     DRE has made no payments pursuant to the Settlement Agreement except for the initial payment of $278,550.

22.     DRE is in breach of the Settlement Agreement.

23.     Bawany has filed to make the payment to BRM required under his Personal Guarantee.

24.     Bawany is in breach of the Personal Guarantee.

**B.      July 2021 Sale**

25.     DRE ran into financial difficulties, and as a result executed a sales agreement with BRM on or about July 30, 2021. *See* Exhibit C to Counterclaim ("Ex. C").

26.     That sale was precipitated in part by the fact that DRE lacked funds to pay the Chinese manufacturer ("Manufacturer") of the medical gloves at issue (the "Goods").

10

27.     The sale was also precipitated by the fact that DRE was behind in its payments to All-Ways Forwarding Int'l Inc. ("All-Ways"), a non-vessel operating common carrier ("NVOCC") licensed by the Federal Maritime Commission ("FMC"). All-Ways provided a variety of transportation services for DRE.

28.     Upon information and belief, because of DRE's failure to pay All-Ways outstanding amounts owed for ocean transportation services provided, All-Ways asserted purported maritime lien rights on the Goods pursuant to its bill of lading terms and conditions.

29.     Due to DRE's financial condition, on or about July 30, 2021, BRM and DRE reached an agreement for BRM to purchase the Goods from DRE (the "Agreement").

30.     Pursuant to the Agreement between BRM and DRE, the title to the Goods was transferred to BRM. *See* Exhibit D to Counterclaim ("Ex. D").

31.     The Agreement further provided in relevant part that: 1) the "manufactured goods are to be released to BRM Trades"; 2) All-Ways Forwarding goods are to be released to BRM Trades; 3) upon payment, BRM Trades becomes the title holder; 4) there will be no additional charges/hidden fees to BRM Trades. BRM Trades has 4 weeks free storage at All-Ways, which is the minimum time needed to arrange distribution for that many containers, after the 4 weeks BRM Trades will pay for storage. Ex. C.

32.     Pursuant to the Agreement, BRM agreed to provide funds for DRE to pay off certain amounts owed to the Manufacturer of the Goods, and to have BRM pay down a portion of the outstanding invoices owed by DRE to All-Ways.

33.     Until it received telex releases from the Manufacturer, All-Ways was not able to exercise its purported lien rights or sell or release the Goods. Because of the balance owed, the Manufacturer was unwilling to issue telex releases until it was paid in full for the Goods.

11

34.    All-Ways also refused to release the Goods until certain of its outstanding invoices for transportation-related services had been paid.

35.    Pursuant to the Agreement between BRM and DRE, BRM paid 2 Million, Seven Thousand Dollars ($2,007,000) to DRE which funds DRE paid to the Manufacturer to obtain telex releases of the goods.

36.    BRM also paid One Million Dollars ($1,000,000) to DRE for DRE to pay down invoices owed to All-Ways.

37.    The payments made by BRM were in exchange for the immediate release of the Goods.

38.    BRM confirmed with DRE that the Goods would be released to BRM upon BRM's payment of the amounts set forth herein.

39.    Upon receipt of the payment in excess of $2,007,000, the Manufacturer issued the telex releases.

40.    Further, as contractually agreed, BRM paid DRE $1,000,000 to be used to pay down All-Ways' outstanding invoices.

41.    Title to the Goods was transferred to BRM on or about August 11th and 12th of 2021.  Ex. D.

42.    As the owner of the Goods at issue, BRM falls within the definition of Merchant under All-Ways bills of lading.

43.    When, as reflected in the Agreement, BRM sought the immediate release of the Goods, All-Ways refused to do so, accepting only a portion of the $1,000,000 paid to DRE and instead decided to sell the Goods, to which BRM had valid title, to a third party.

12

44.     When BRM demanded that All-Ways release the Goods to BRM, All-Ways refused to do so.  Initially, All-Ways reported that it was in the process of selling BRM's Goods to a third party.

45.     Later, All-Ways asserted that the Goods had been sold.

46.     At that point, BRM demanded that, at a minimum, All-Ways pay BRM amounts recovered from any sale in excess of the amount All-Ways asserted was owed for transportation services provided.  All-Ways asserted that it was unable to do so unless DRE and BRM agreed as to the proper recipient of the funds or unless All-Ways received a court order directing to whom the funds should be distributed.

47.     Although the terms and conditions of the bill of lading contracts under which the goods moved provided for exclusive jurisdiction for claims arising thereunder in the Southern District of New York, DRE is seeking to have this Court direct that payment collected by All-Ways be paid to DRE.

48.     BRM has fully performed under the Agreement.

49.     BRM confirmed with DRE that All-Ways was fully prepared to perform pursuant to the Agreement and release the Goods to BRM before making the payments described above.

50.     On August 6, 2021, DRE sent BRM a credit card authorization form for BRM to execute, which funds were to be used to pay a portion of the invoices DRE owed All-Ways.

51.     DRE did not inform BRM that the payment was being made untimely and that All-Ways would refuse to release the Goods to BRM.

52.     The payments made by BRM were in exchange for the immediate release of the Goods.

47726314v1

53.     Upon receipt of the payment in excess of $2,000,000, the Manufacturer issued the telex releases.

54.     Further, as agreed, BRM paid DRE $1,000,000 to be used to pay down All-Ways' outstanding invoices.

55.     Title to the Goods was transferred to BRM on or about August 11th and 12th of 2021. Ex. D.

56.     BRM fully performed under the terms of the Agreement.

57.     DRE has breached the terms of the Agreement by failing to have the Goods released to BRM.

58.     DRE has breached the terms of the Agreement by failing to authorize the release of the Goods by All-Ways to BRM.

59.     DRE has breached the terms of the Agreement by failing to instruct All-Ways not to sell the Goods but instead to immediately turn them over to BRM as provided for in the Agreement.

60.     DRE has breached the terms of the Agreement by failing to instruct All-Ways to pay over the proceeds of any sale of the Goods to BRM, the owner of the Goods.

61.     DRE has breached the terms of the Agreement by failing to immediately return money paid to it by BRM for payment to All-Ways when it learned that All-Ways was refusing to release the Goods to BRM.

62.     DRE has breached the terms of the Agreement by refusing to return any of the $1,000,000 paid by BRM for payment to All-Ways, even the $700,000 that was not forwarded to All-Ways.

63.     No conceivable justification exists for DRE's continued retention of these funds.

47726314v1

64.     DRE has breached the terms of the Agreement by asserting ownership of the Goods in express violation of the terms of the Agreement.

65.     BRM sought to revoke the credit card payment to American Express whereby $1,000,000 was paid to DRE on the ground that BRM had not received the containers in question.

66.     DRE prevented the revocation by falsely asserting that the containers had been delivered to BRM.

67.     BRM has suffered damages in the form of money it paid to DRE for payment to the Manufacturer, and to DRE for the release of the Goods, which Goods have been wrongfully withheld by DRE.

68.     BRM has also suffered lost profits because of its inability to sell its Goods to a third party as result of DRE's refusal to authorize and instruct the release of BRM's Goods to BRM.

69.     The Goods have a value in excess of $6,000,000.

70.     DRE owes BRM its reasonable attorneys' fees and costs incurred in seeking to collect amounts it is owed.

## COUNT I (BREACH OF SETTLEMENT AGREEMENT–DRE)

71.     BRM incorporates by reference paragraphs 1-70 as if set forth fully herein.

72.     BRM and DRE entered into a Settlement Agreement, whereby DRE agreed to pay BRM Three Million, Twenty-Eight Thousand, Five Hundred Fifty Dollars ($3,028,550.00). *See* Ex. A.

73.     The Settlement Agreement provided that DRE would make an initial payment of Two Hundred, Seventy-Eight Thousand, Five Hundred Fifty Dollars ($278,550) on August 1, 2021, and Two Hundred Fifty Thousand Dollars ($250,000) on each subsequent month beginning on the first day of September of 2021 until the full amount was paid. *See* Ex. A.

15

74.     The Settlement Agreement provides for a late charge of 5% if payment is not received by the fifth day of the month it is due.

75.     The Settlement Agreement further provides for recovery of attorneys' fees if BRM has to seek collection of amounts due.

76.     DRE breached the Settlement Agreement by failing to make the initial payment of Two Hundred, Seventy-Eight Thousand, Five Hundred Fifty Dollars ($278,550) until one month late on September 3, 2021. No late fee was included as was required pursuant to the Settlement Agreement.

77.      DRE failed to make the scheduled payments of Two Hundred Fifty Thousand Dollars ($250,000) for the months of September and October of 2021.

78.     DRE is in breach of the Settlement Agreement.

79.     BRM fully performed pursuant to the Settlement Agreement.

### COUNT II (BREACH OF PERSONAL GUARANTEE-BAWANY)

80.     BRM incorporates by reference paragraphs 1-79 as if set forth fully herein.

81.     Bawany executed a Personal Guarantee whereby he personally guaranteed 75% of the amount owed to BRM under the Settlement Agreement between DRE and BRM, if DRE failed to perform thereunder. *See* Ex. B.

82.      Despite the fact DRE is in breach of the Settlement Agreement, Bawany has failed to make the payments to BRM required under his Personal Guarantee.

83.     Bawany is in breach of the Personal Guarantee.

84.     BRM has fully performed pursuant to the Personal Guarantee.

### COUNT III (BREACH OF JULY 30, 2021 CONTRACT–DRE)

85.     BRM incorporates by reference paragraphs 1-84 as if set forth fully herein.

16

86.     Pursuant to the Agreement between BRM and DRE, DRE was to transfer title to the Goods in the 68 containers to BRM.

87.     The Agreement further provided in relevant part that upon receiving the payments specified therein the Goods were to be released to BRM.

88.     Until it received telex releases from the Manufacturer, All-Ways was not in a position to exercise its purported lien rights or sell or release the Goods.

89.     Because of the balance owed, the Manufacturer was unwilling to issue such telex releases until it was paid in full for the Goods.

90.     All-Ways also refused to release the Goods until certain of its outstanding invoices for transportation-related services had been paid.

91.     Pursuant to the Agreement between BRM, and DRE, BRM paid DRE Two Million, Seven Thousand Dollars ($2,007,000) to be paid to the Manufacturer to obtain telex releases of the goods.

92.     BRM also paid One Million Dollars ($1,000,000) to DRE for DRE to pay down invoices owed to All-Ways.

93.     BRM confirmed with Bawany and DRE that All-Ways was fully prepared to perform pursuant to the Agreement and release the Goods to BRM before making the payments described above.

94.     The payments made by BRM were in exchange for the immediate release of the Goods.

95.     Upon receipt of the payment of $2,007,000, the Manufacturer issued the telex releases.

47726314v1

93. Further, as agreed, BRM paid DRE $1,000,000 to be used to pay down All-Ways' outstanding invoices.

94. Title to the Goods was transferred to BRM on or about August 11th and 12th of 2021. *See* Ex. C.

95. BRM fully performed under the terms of the Agreement.

96. DRE has breached the terms of the Agreement by failing to have the Goods released to BRM.

97. DRE has breached the terms of the Agreement by failing to authorize the release of the Goods by All-Ways to BRM.

98. DRE has breached the terms of the Agreement by failing to instruct All-Ways not to sell the Goods but instead to immediately turn them over to BRM as provided for in the Agreement.

99. DRE has breached the terms of the Agreement by failing to instruct All-Ways to pay over the proceeds of any sale of the Goods to BRM, the owner of the Goods.

100. DRE has breached the terms of the Agreement by failing to immediately return money paid to it by BRM for payment to All-Ways when it learned that All-Ways was refusing to release the Goods to BRM.

101. DRE has breached the terms of the Agreement by refusing to return any of the $1,000,000 paid by BRM for payment to All-Ways, even the $700,000 that was not forwarded to All-Ways.

102. No conceivable justification exists for DRE's continued retention of these funds.

103. DRE has breached the terms of the Agreement by asserting ownership of the Goods in express violation of the terms of the Agreement.

47726314v1

104. BRM has suffered damages in the form of money it paid to DRE for payment to the Manufacturer, and to DRE for the release of the Goods, which Goods have been wrongfully withheld by DRE.

105. BRM has also suffered lost profits because of its inability to sell its Goods to a third party as a result of DRE's refusal to authorize and instruct the release of BRM's Goods to BRM.

106. The Goods have a value in excess of $6,000,000.

107. DRE owes BRM its reasonable attorneys' fees and costs incurred in seeking to collect amounts it is owed.

## COUNT IV (FRAUD – DRE and BAWANY)

108. BRM incorporates by reference paragraphs 1-107 as if set forth fully herein.

109. A party has a cause of action for common law fraud when (1) representation of fact was made, (2) the representation was material and the person relied on the representation, (3) the person making the representation knew of its falsity, and (4) the injured party suffered because of the reliance of such false representation.

110. Pursuant to the Agreement, BRM purchased the Goods from DRE.

111. Pursuant to the Agreement, BRM issued payment to DRE in the amount of Two Million, Seven Thousand Dollars ($2,007,000) for payment to the Manufacturer to obtain telex releases of the Goods.

112. Pursuant to the Agreement, BRM issued payment to DRE in the amount of $1,000,000 to be used to pay down a portion of All-Ways' outstanding invoices.

113. BRM acted in good faith reliance upon the affirmative representations of DRE and Bawany that once DRE had received telex releases evidencing payment to the Manufacturer and

19

payment of funds to be used to pay a portion of All-Ways invoices, the Goods immediately would be released to BRM.

114.    Instead of complying with the Agreement, DRE and Bawany instead refused to release the Goods and continued to insist upon its ownership of the Goods.

115.    Due to the knowingly false and misleading representations of DRE and Bawany, All-Ways decided to sell the Goods, to which BRM had valid title, to a third party for a substantial profit instead of turning them over to BRM as was required pursuant to the Agreement.

116.    DRE and Bawany knowingly and intentionally deceived BRM into believing that the Goods would be released to BRM once payment to DRE had been made for payment to the Manufacturer to obtain the telex releases, and for payment to All-Ways.  BRM reasonably relied on DRE's false and misleading representations.

117.    The conduct of Bawany and DRE consisted of intentional misrepresentations and deceit, with the intention to deprive BRM of its property, legal rights, or otherwise cause injury.

118.    BRM has suffered damages in the form of money it paid to the Manufacturer, and to DRE for the release of its goods, which Goods have been fraudulently withheld by DRE.

119.    BRM has suffered lost profits as a result of its inability to sell its Goods to a third party due to DRE and Bawany's fraudulent refusal to release BRM's Goods to BRM, which Goods have a value in excess of $6,000,000.

120.    BRM has suffered damages because of DRE and Bawany's refusal to return payments made by BRM, to which funds were to be used to obtain the release of the Goods to BRM.

121.    To the extent that All-Ways has sold BRM's Goods to a third party, BRM, not DRE, is entitled to collect all money received by All-Ways pursuant to the sale of BRM's Goods.

47726314v1

122.    All-Ways has, or had, more than 68 containers of medical gloves in its possession during the relevant time period. On information and belief, DRE and Bawany initially failed to identify which of the 68 containers of medical gloves in All-Ways' possession were BRM's Goods.

123.    On information and belief, DRE and Bawany only belatedly identified containers sold by All-Ways as including the 68 containers of BRM Goods to wrongfully prevent BRM from taking possession of its Goods.

124.    DRE and Bawany owe BRM its reasonable attorneys' fees and costs incurred in seeking to collect amounts it is owed.

125.    Not only have DRE and Bawany refused to perform under the Agreement as obligated, but they also have refused to return $1,000,000 dollars that BRM paid to DRE for DRE to pay down All-Ways' outstanding invoices.

130.    On information and belief, only $300,000 dollars was paid to All-Ways.

131.    Despite the fact the Goods have not been turned over to BRM, DRE and Bawany have refused to return any of the $1,000,000 paid by BRM for payment to All-Ways, even the $700,000 that was not forwarded to All-Ways.

132.    BRM sought to revoke the credit card payment to American Express whereby $1,000,000 was paid to DRE on the ground that BRM had not received the containers in question.

133.    DRE prevented the revocation by fraudulently asserting that the containers had been delivered to BRM, despite knowing that its statement was false.

134.    No justification exists for DRE and Bawany's fraudulent retention of these funds.

## COUNT V (INJUNCTIVE RELIEF – DRE and BAWANY)

135.    BRM incorporates by reference paragraphs 1-134 as if set forth fully herein.

47726314v1

136. DRE and Bawany should be ordered to immediately turn over the Goods to BRM as BRM made payments to DRE for payment to the Manufacturer and for payment of a portion of All-Ways' invoices. BRM reasonably relied upon representations that BRM's Goods would be turned over to BRM upon BRM making such payments.

137. DRE and Bawany should be enjoined from selling BRM's Goods to a third party.

138. DRE and Bawany should be enjoined from selling any medical gloves to a third party until BRM has been made whole.

139. If DRE and/or Bawany has sold BRM's Goods to a third party, DRE and Bawany should be ordered to immediately turn over the funds collected to BRM.

140. If DRE and/or Bawany has sold medical gloves to a third party, BRM and Bawany should be ordered to immediately turn over the funds collected to BRM until BRM is made whole.

141. DRE and Bawany should be enjoined from turning over any funds collected from a sale of the Goods to DRE.

142. Absent injunctive relief, BRM will suffer irreparable harm as it will lose possession of its Goods, which have a value of in excess of $6,000,000.

143. Absent injunctive relief, BRM will suffer irreparable harm if the funds are not paid over to BRM and instead paid over to DRE as DRE is suffering financial difficulties and BRM will not be in a position to recover funds from DRE to which it is legally entitled.

**WHEREFORE**, Counter-Plaintiff BRM seeks recovery from DRE for:

A. Breach of the Settlement Agreement between DRE and BRM;

B. Damages in the form of Two Million, Seven Hundred Fifty Thousand Dollars ($2,750,000) plus late charges and interest;

C. Breach of the July 30, 2021 Contract between DRE and BRM;

22

D.  Damages in the form of money BRM paid to DRE for payment to the Manufacturer, and to DRE for payment to All-Ways, for the release of its Goods, which Goods have been wrongfully withheld;

E.  Lost profits as a result of BRM's inability to sell its Goods, which have a value in excess of $6,000,000 to a third party as a result of the failure to release BRM's Goods to it;

F.  A cease and desist Order enjoining the sale of BRM's Goods;

G.  A cease and desist Order enjoining the sale of medical gloves by DRE;

H.  An order providing that if DRE and/or Bawany has sold BRM's Goods to a third party, DRE and Bawany should be ordered to immediately turn over the funds collected to BRM.

I.  Attorney's fees;

J.  Court costs; and

K.  Such other relief as the Court deems appropriate; and

**WHEREFORE**, Counter-Plaintiff BRM seeks recovery from DRE and Bawany for:

L.  Damages arising from the fraudulent conduct of DRE and Bawany, including money paid to DRE for payment to the Manufacturer, and to DRE for payment to All-Ways, for the release of its Goods, which Goods have been wrongfully withheld:

M.  Lost profits as a result of BRM's inability to sell its Goods, which have a value in excess of $6,000,000 to a third party as result of the failure to release BRMs' Goods to it;

N.  Attorney's fees;

23

O.     Court costs; and

P.     Such other relief as the Court deems appropriate.

**WHEREFORE**, Counter-Plaintiff BRM seeks recovery from Bawany for:

Q.     Breach of the Personal Guarantee;

R.     Damages in the amount of Two Million, Sixty- Two Thousand, Five Hundred Dollars ($2,062,500);

S.     Attorney's fees;

T.     Court costs; and

U.     Such other relief as the Court deems appropriate.

Respectfully Submitted,

Dated: October 19, 2021                    LATHROP GPM LLP

By*:    /s/ Brendan Collins*
Michael J. Abrams (Mo. Bar. 42196)
Kate O'Hara Gasper (Mo. Bar. 61198)
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
T: 816.460.5640
F: 816-292-2001
michael.abrams@lathropgpm.com
kate.gasper@lathropgpm.com

Brendan Collins (*pro hac vice* admitted)
GKG LAW, P.C.
1055 Thomas Jefferson Street, NW
Suite 500
Washington, DC  20007
Telephone: 202-342-6793
Facsimile:  202-342-5219
Email:      bcollins@gkglaw.com

ATTORNEYS FOR DEFENDANTS AND
COUNTER-PLAINTIFF BRM TRADES,
LLC

25