IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DRE HEALTH CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-00745-SRB |
| | ) |
| BRM TRADES, LLC, et al., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant and Counterclaim Plaintiff BRM Trades, LLC's ("BRM Trades") Motion for Partial Summary Judgment. (Doc. #50.) For the reasons stated below, the motion is granted.

**I.     FACTUAL BACKGROUND**

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

This case arises out of a contract dispute regarding the sale of Niterex gloves. Plaintiff and Counterclaim Defendant DRE Health Corporation ("DRE Health") is a medical supply business that manufactures and sells Personal Protective Equipment. On March 8, 2021, the parties entered into a sales agreement ("the First Sales Agreement") in which DRE Health agreed to sell BRM Trades gloves in exchange for $6,605,375. (Doc. #53-2.)[2] Between March 9, 2021,

---

[1] The facts discussed below are taken from the parties' briefs and exhibits, without further quotation or attribution unless otherwise noted.

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

and April 9, 2021, BRM Trades paid DRE Health $3,027,550. The parties dispute whether BRM Trades ever received the gloves.

On July 29, 2021, the parties entered into a second sales agreement for the purchase of gloves ("the Second Sales Transaction"), in which BRM Trades agreed to pay DRE Health $3,006,000. On August 6, 2022, BRM Trades paid DRE Health $2,007,000. Shortly after, BRM Trades paid DRE Health an additional $1,000,000.

On August 5, 2021, the parties executed a Settlement Agreement. Pursuant to the Settlement Agreement, BRM Trades released all claims against DRE Health arising from the First Sales Agreement, in exchange for DRE Health's agreement to pay $3,028,550. DRE Health's CEO, Isaac Bawany ("Mr. Bawany") executed a Personal Guaranty, guaranteeing 75% of the total settlement amount, interest, and attorney's fees. The Settlement Agreement required DRE Health to make an initial payment of $278,550 on August 1, 2021, followed by monthly payments of $250,000. If monthly payments were not made by the fifth day of each month, DRE Health would incur a 5% penalty fee. Further, if DRE Health failed to pay by the last day of each month, it breached the Settlement Agreement. DRE Health failed to make a payment in August 2021. On September 3, 2021, DRE Health paid $278,550. On October 1, 2021, DRE Health paid $250,000. No further payments were made by DRE Health pursuant to the Settlement Agreement.

DRE Health sued BRM Trades in the Circuit Court of Jackson County, alleging that BRM Trades breached the Second Sales Agreement. BRM Trades removed the action to this Court. BRM Trades asserts the following counterclaims: (I) breach of the Settlement Agreement against DRE Health, (II) breach of the Personal Guaranty against Mr. Bawany, (III) breach of the Second Sales Transaction against DRE Health, (IV) fraud against DRE Health and Mr. Bawany;

2

and (V) injunctive relief against DRE Health and Mr. Bawany.  BRM Trades now moves for partial summary judgment on counterclaim Counts I and II.  DRE Health and Mr. Bawany oppose the motion.  The parties' arguments are discussed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III. DISCUSSION

BRM Trades argues that it has proven both the existence and breach of the Settlement Agreement and Personal Guaranty (collectively, "the Agreements") such that it is entitled to summary judgment on counterclaim Counts I and II.  The parties' arguments are addressed below.

### A. Counterclaim Count I, Breach of the Settlement Agreement

BRM argues that it has proven each element of breach of the Settlement Agreement.  DRE Health does not disagree and raises affirmative defenses, which the Court will address further below.

Here, the Court finds that BRM Trades has shown that DRE Health breached the Settlement Agreement. "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010).[3]

It is uncontroverted that the parties executed the Settlement Agreement on August 5, 2021, under which DRE Health agreed to pay BRM Trades $3,028,550, in exchange for BRM Trades releasing all related claims against DRE Health. It is uncontroverted that BRM Traders performed pursuant to the Settlement Agreement by relinquishing all claims against DRE Health related to the First Sales Agreement. It is uncontroverted that DRE Health has failed to pay nine of Settlement Agreement's eleven scheduled payments, which constitutes a breach of the Settlement Agreement. *See* (Doc. #53-8, p. 1) ("If DRE fails to make acceptable payment on or before the last day of a month in which that payment is due, DRE shall be in breach of this Agreement."). Finally, it is uncontroverted that BRM Trades has suffered damages, as BRM Trades was not paid $3,028,550, as set out in the Settlement Agreement. The Court finds that BRM Trades has satisfied its burden of proving its breach of contract claim.

DRE Health argues that there are two genuine disputes of material fact that preclude the grant of summary judgment: (1) that DRE Health was fraudulently induced into entering the Settlement Agreement and (2) that DRE Health entered into the Settlement Agreement under duress. The Court will address DRE Health's arguments separately below.

### 1. Fraudulent Inducement

DRE Health argues that it was fraudulently induced into entering into the Settlement Agreement because it relied on BRM Trades' oral representation that the Agreements "could be

---
[3] The parties agree and the Court finds that Missouri law applies.

4

edited later and that it would make its payment due immediately[.]" (Doc. #60, p. 17.) BRM Trades disagrees, arguing that DRE Health fails to present evidence showing that BRM Trades made any false statements.

In Missouri, to prove fraudulent inducement, DRE Health must show (1) "there was a false, material factual representation;" (2) BRM Trades "knew of its falsity or was ignorant of the truth," and (3) "intended that [DRE Health] would act upon it in a manner reasonable contemplated;" and (4) that DRE Health "was ignorant of the representation's falsity, relied on its truth, had the right to do so, and that its reliance consequently and proximately caused it injury." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 688 F.3d 938, 941 (8th Cir. 2012) (applying Missouri law) (citations omitted). "The critical element in a fraud case based on a statement of present intent is proof that the speaker, at the time of the utterance, actually did not intend to perform consistent with his words." *Paul v. Farmland Indus., Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994) (citation omitted).

DRE Health argues that BRM Trades made a false representation in promising that it would pay the money due on the Second Sales Transaction "immediately like it said it would." (Doc. #60, p. 17.) Assuming BRM Trades made this representation, DRE Health presents no evidence that it was false. DRE Health presents no evidence showing that BRM Trades failed to make timely payments. In fact, BRM Trades has presented evidence that it paid the amount due on the Second Sales Transaction in full within two days after executing the Settlement Agreement. Additionally, DRE Health argues that BRM Trades made a false representation by promising the Settlement Agreement "could be edited later," but does not state how that representation was false or how it caused DRE Health any injury. (Doc. #60, p. 17.) DRE

5

Health's argument is rejected because it has failed to show evidence of show fraudulent inducement.

### 2. Duress

DRE Health argues that it entered into the Settlement Agreement under duress because, "[k]nowing DRE was in danger of financial ruin, BRM only offered to make its payment and provide additional investments in DRE's factories if DRE agreed to the Settlement Agreement and Personal Guaranty." (Doc. #60, pp. 18-19.) BRM Trades disagrees, arguing that "DRE's financial necessity was not caused by BRM and therefore does not constitute duress as a matter of law." (Doc. #62, p. 7.)

"In order to avoid a contract with a claim of economic duress the claimant must reveal oppression from the wrongful conduct of another that deprives them of free will." *Long's Marine, Inc. v. Boyland*, 899 S.W.2d 945, 948 (Mo. Ct. App. 1995) (citation omitted). "Whether the facts alleged are sufficient to support a claim of duress is a question of law for the court." *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 370 (Mo. Ct. App. 1996) (citation omitted). "Conduct cannot constitute duress unless it is wrongful; it is not duress to do, or threaten to do, what one has a right to do." *Id.* (citing *Gustin v. F.D.I.C.*, 835 F.Supp. 503, 508 (W.D. Mo. 1993)). "The financial necessity of a party, not caused by the other contracting party, does not constitute a duress." *Long's Marine*, 899 S.W.2d at 947 (citation omitted).

Here, DRE Health alleges that BRM Trades wrongfully used DRE Health's financial condition to force it to enter into the Settlement Agreement. However, DRE Health does not submit evidence showing that its financial distress was caused by BRM Trades. For example, DRE Health admits that at least some of its financial distress was caused by its "promise[s] to

6

repay its freight-forwarder, All-Ways Freight, for some outstanding items." (Doc. #60, p. 20.)[4] Further, DRE Health does not argue that it was deprived of free will such that it was unable to confer with counsel or negotiate the terms of the Settlement Agreement. Accordingly, the Court finds that DRE Health has not presented evidence sufficient to state a genuine dispute of material fact as to whether it entered into the Settlement Agreement under duress.

    **B.    Damages**

        **1.    Set-off**

DRE Health argues that summary judgment on counterclaim Counts I is precluded because "DRE [Health] should be able to set-off its debts under the Settlement Agreement against the tortious acts of BRM [Trades]." (Doc. #60, p. 14.) BRM Trades disagrees, arguing that "Missouri case law does not support DRE's contention that its unsubstantiated allegations against BRM preclude summary judgment for breach of contract." (Doc. #62, p. 10.)

"The right of setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (citation and quotations omitted). "In order for a set-off to be applied, the parties must be 'mutually indebted.'" *Transit Cas. Co. v. Selective Ins. Co. of Southeast*, 137 F.3d 540, 545 (8th Cir. 1998) (quoting *Sturdivant Bank v. Stoddard Cty.*, 332 Mo. 568, 572 (Mo. banc 1933)) (noting that "Missouri courts continue to allow offset in contractual disputes"). "[T]o warrant a set-off at law the demands must be mutual and subsisting between the same parties, due in the same capacity or right, and there must be mutuality as to the quality of right." *Id.* (citation and quotation omitted); *see*

---

[4] *See also* (Doc. #60, p. 12) ("DRE needed the money from BRM badly–it had submitted a credit card payment for $853,185.89 the day prior, but DRE's checking account was overdrawn by $800,000. . . . Mr. Bawany had also told BRM that he recently agreed to settlement with two other parties, and he needed to pay them immediately.").

*Sturdivant*, 332 Mo. at 572 ("If defendant's demand is due and payable while plaintiffs is not . . . it seems clear that the parties are not 'mutually indebted.'").

Here, DRE Health's argument fails because it does not show that DRE Health and BRM Trades are mutually indebted. DRE Health argues that it is entitled to a set-off based on its claims for damages against BRM Trades that are currently pending before this Court. Even if DRE Health ultimately prevailed on these claims, they are not currently due and payable. Consequently, these pending claims for damages cannot form the basis of a set-off. *See Janes v. Janes*, 242 S.W.3d 744, 751 (Mo. Ct. App. 2007) ("The set-off in this case clearly involves obligations that are mutual and subsisting between the same parties, and due in the same capacity or right."). Accordingly, DRE Health's argument is rejected.

As BRM Trades has proven the existence and breach of the Settlement Agreement, and because DRE Health has failed to show a genuine dispute of material fact precluding summary judgment, the Court finds that summary judgment on Count I is warranted.

**2. Damages Owed to BRM Trades on Counterclaim Count I**

BRM Trades requests as damages for breach of the Settlement Agreement (1) the amount owed in principle; (2) late fees and prejudgment interest, as set out in the Settlement Agreement; and (3) late fees and pre-judgement interest "at the highest rate allowed by law[.]" (Doc. #52, p. 5.)

"The proper measure of damages is a question of law for determination by the trial court." *Business Men's Assurance Co. of Am. v. Graham*, 891 S.W.2d 438, 449 (Mo. Ct. App. 1994). "The party claiming damages bears the burden to establish the existence and amount of damages within a reasonable degree of certainty." *Scheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 731 (Mo. Ct. App. 2014) (citing *The Manors at Village Green Condo., Inc. v. Webb*, 341 S.W.3d 162, 164 (Mo. Ct. App. 2011)). "An award of damages must be supported by

competent and substantial evidence. . . . [and] requires proof of facts supporting a basis for a rational estimate of damages without resorting to speculation." *The Manors at Village Green*, 341 S.W.3d at 164. In Missouri, "[i]f a contract provides for the payment of attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party." *Lee v. Investors Title Co.*, 241 S.W.3d 366, 368 (Mo. Ct. App. 2007) (citation and quotations omitted).

BRM Trades has not satisfied its burden of establishing the amount of damages owed within a reasonable degree of certainty. As to the principle owed, DRE Health was obligated to make a final installment payment of $250,000 on July 1, 2022, which is after BRM Trades filed the instant motion. BRM Trades states that it "anticipate[d] DRE will fail to make these payments, but in the event it is paid, the[y] would be excluded from the damages calculation." (Doc. #52, p. 9.) This showing does not satisfy BRM Trades' burden of proving "substantial evidence sufficient to support the award." *The Manors at Village Green*, 341 S.W.3d at 165. As calculations for interest and late fees are determined by the amount of principal due, BRM Trades has similarly failed to provide evidence sufficient to support an award. Finally, as to attorney's fees, BRM Trades has not provided any evidence for the Court to determine whether the requested award is reasonable. *See Weitz Co. v. MH Washington*, 631 F.3d 510, 528–29 (8th Cir. 2011) (setting out factors used to determine "the reasonableness of attorney's fees" under Missouri law). Consequently, the parties shall submit supplemental briefing on damages arising from the breach of the Settlement Agreement.

C. **Counterclaim Count II, the Personal Guaranty**

BRM Trades argues that it has established the existence and terms of the Personal Guaranty such that it is entitled to summary judgment on counterclaim Count II. "It is the most basic principle of contract law that parties are bound by the terms of the contracts they sign and

9

courts will enforce contracts according to their plain meaning, unless induced by fraud, duress, or undue influence." *Lehman v. Auto. Inv., LLC*, 608 S.W.3d 733, 738 (Mo. Ct. App. 2020), *reh'g and/or transfer denied* (Aug. 18, 2020), *transfer denied* (Nov. 3, 2020).

Here, the parties do not dispute that BRM Trades and Mr. Bawany entered into the Personal Guaranty, under which Mr. Bawany assumed personal liability for any amount due for breach of the Settlement agreement, including late fees, interest, and attorney's fees. Mr. Bawany argues that there are genuine disputes of material fact as to whether he was fraudulently induced into or under duress when entering the Personal Guaranty. For the reasons discussed above, the Court rejects these arguments. Consequently, BRM Trades has shown there is no genuine dispute of fact as to Mr. Bawany's liability under the Personal Guaranty such that the Court finds that summary judgment is warranted as to counterclaim Count II. Because Mr. Bawany is liable for 75% of damages arising from breach of the Settlement Agreement, any award amount will be determined upon the parties' supplemental briefings on the issue of damages.

## IV. CONCLUSION

For the reasons stated, it is ORDERED that BRM Trades' Motion for Partial Summary Judgment (Doc. #50) is GRANTED. It is further ORDERED that the parties shall submit supplemental briefing on the amount of damages arising from breach of the Settlement Agreement on or before September 12, 2022.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 29, 2022